32 493
46a 108

# EMILY H. EMERSON
## *v.*
## JAMES M. CLAYTON.

1. PARTIES — MARRIED WOMEN — *of their right to sue alone, and herein of their separate rights at common law and under the statute.* Before the passage of the act of 21st February, 1861, entitled, " *An act to protect married women in their separate property*," a *femme covert* could not sue alone for her own property, or institute any suit in her own name for the recovery of any of her rights.

2. Indeed, she had no rights of personal property. The common law did not recognize the condition of a sole trader in a *femme covert*, nor does it contemplate a case where a wife might hold property separate and apart from her husband. By it the personal estate of the wife vested in the husband, and gave him absolute dominion over it.

3. But the act of 1861, has made a radical and thorough change in the condition of a *femme covert* in that regard. By that act, the right of property and the "sole control" over it, are vested in her. This right includes full dominion over her own property, and she must be considered a *femme sole* in regard to her estate of every sort owned by her before marriage, or which she may acquire during coverture in good faith, from any person other than her husband.

4. Having the "sole control" of it, there is no necessity of joining her husband in an action to recover it, or for trespasses upon it. As respects her property, her rights are the only rights affected, and she alone must bring suit for any invasion of them.

5. Under this statute, the wife holds the property wholly independent of her husband. So far as it is concerned, she is unmarried, and she may institute and prosecute suits in her own name for its recovery, even against her husband, should he, contrary to her wishes, and in contempt of her rights, unlawfully interfere with it.

WRIT OF ERROR to the Circuit Court of Clinton County; the Hon. SILAS L. BRYAN, Judge, presiding.

The pleadings in this cause upon which the questions arise, are sufficiently set forth in the opinion of the court.

Mr. BEN BOND, for the plaintiff in error.

This is an action of replevin commenced by a married woman, suing in her own name, without joining her husband. I insist that the act of 21st February, 1861, entitled *"An act to protect married women in their separate property,"* Sess. Acts, 143, has so far changed the common law rule in that regard, that a married woman may now sue alone to recover her separate property. *Cumming's Appeal,* 11 Penn. State, 272; *Goodyear* v. *Rumbaugh,* 13 id., 480, construing act of Penn. 11 April, 1848; *Sheidle* v. *Weishlee,* 16 Penn. State, 134; *Long's Adm'r* v. *White's Adm'r and heirs,* 5 J. J. Marsh. 230; *McIntire* v. *Chappell,* 2 Texas, 378; *O'Brien* v. *Hilburn,* 9 id. 297; *Gilliard* v. *Chessney,* 13 id. 337; *Chapman* v. *Allen,* 15 id. 278.

Messrs. BUXTON & WHITE, for the defendant in error.

I. The replication of plaintiff does not state *how* she acquired the property in question, whether by devise, descent or otherwise.

II. The statute does not change the common law so as to authorize a married woman to sue in her own name, without joining her husband, but only gives her additional rights and leaves her to enforce them in the same manner as she could those previously existing.

III. This statute can be fully enforced by adhering to the common law rules in regard to who shall be made parties, and

when this is the case the common law cannot be considered as repealed by implication. Where, by the custom of London, a married woman might sue as a *femme sole*, the courts held that her husband must join for conformity. 1st Chitty's Blk. Com. p. 360, note 3.

IV. When the object of the legislature can be as well attained by adhering to the rules of the common law in enforcing the rights by them granted to married women, the courts will certainly do so; and a statute will not be construed to repeal the existing law, unless the two are absolutely incompatible. Bacon's Ab., title Statute.

Mr. Justice Breese delivered the opinion of the Court:

On the twenty-first of February, 1861, an act was passed by the general assembly of this State, entitled "An act to protect married women in their separate property," which provides " That all the property, both real and personal, belonging to any married woman, as her sole and separate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman, during coverture, acquires, in good faith, from any person, other than her husband, by descent, devise, or otherwise, together with all the rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain, during coverture, her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried; and shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband." Sess. Laws 1861, p. 143.

At the March Term, 1863, of the Clinton Circuit Court, the plaintiff in error filed her plaint in that court in replevin for certain chattels, against the defendant in error, claiming the chattels as her own property.

To this plaint the defendant pleaded in abatement the coverture of the plaintiff, at the time of the commencement of the suit. To this plea, the plaintiff replied that the property sued

for, was, during her coverture, acquired in good faith from persons other than her husband, with her own money and in her own right, and as such remains her sole and separate property and under her sole control, in virtue of the act of February 21, 1861.

To this replication the defendant demurred, and the court sustained the demurrer.

The questions presented by these pleadings are important, and of the first impression in this court, and we have fully considered them.

Before the enactment of this law, there can be no doubt a *femme covert* could not sue alone for her own property, or institute any suit in her own name for the recovery of any of her rights. Indeed, she had no rights of personal property; all belonged by the marriage to her husband, which he might have reduced into his possession, and all was liable to become so subject.

The common law did not recognize the condition of a sole trader in a *femme covert;* nor did it contemplate a case where a wife might hold property separate and apart from her husband. By it, the personal estate of the wife vested in the husband, and gave him absolute dominion over it. In the progress of civilization, an artificial state of society has grown up incompatible, to some extent, with that state of simplicity from which many rules of the common law have been derived, and affecting in a serious degree, the artificial relations of society, and among them, that of husband and wife. In these days of excitement and speculation, by which fortunes are wrecked in a moment, and the innocent made to suffer from no misconduct of their own, it has been thought wise and expedient by the legislature of this and of other States, to protect the property of married women, not only from such catastrophies, but to remove it entirely from the control of her husband, and making her, as it regards such property, to all intents and purposes a single woman.

Such a change in the relative rights and powers of husband and wife, must, of necessity, give a different operation to the

rules of law by· which they are to be governed. The right being vested in the wife, by the statute, it must, if the act is to be enforced, remain intact until she consents to dispose of the property, for this right includes full dominion over it. Her rights, then, are the only rights affected, and on the well established principles of the law, she alone must bring suit for any invasion of them. By this statute, a married woman must, since its enactment, be considered a *femme sole* in regard to her estate, of every sort owned by her before marriage, or which she may acquire during coverture in good faith from any person not her husband, by descent, devise or otherwise, together with all the rents, issues, increases and profits thereof. And it is to be under her "sole control," and to be held, owned, possessed and enjoyed by her, the same as though she was sole and unmarried, and it is not subject to the disposal, control or interference of her husband, nor is it subject to execution or attachment for his debts.

Language more plain and explicit than this could hardly be used to express the intention of the legislature.

They designed to make, and did make, a radical and thorough change in the condition of a *femme covert*. She is unmarried, so far as her property is concerned, and can deal with it as she pleases. Having the "sole control" of it, there is no necessity of joining her husband in an action to recover it, or for trespasses upon it. The very object of the statute, it would seem, was to keep it out of the control of her husband in any and every respect; that the wife should be wholly independent of him in regard to it. If this were not so, the act itself would be futile and of no effect. The husband, for purposes of his own, might refuse to join in an action with the wife. He might connive with others to dispossess her of her property. He might prefer that her property should pay his debts, rather than his own should be seized for such purpose, and if so, it is not to be supposed he would join in replevin, or in any other action to recover the possession.

We are well satisfied the act can have no very beneficial operation in favor of married women, or be effective in the

protection of her separate property, unless the "sole control" conferred upon her over it, is made to extend to the commencement and prosecution of suits for its recovery, even against her husband, should he, contrary to her wishes, and in contempt of her rights, unlawfully interfere with it. The right of "sole control" over the separate property of the wife by her, necessarily confers the power to do whatever is necessary to the effectual assertion and maintenance of that right.

These views are sanctioned by the Supreme Court of Pennsylvania, under a statute similar, in most respects, to our own. (*Goodyear* v. *Rumbaugh and wife*, 13 Penn. 480; *Cummings' Appeal*, 11 id. 275.)

We see no other mode by which this statute can be made effectual for the purposes contemplated by the legislature, than by holding the wife, as to her separate property, to be in the condition of an unmarried woman, and capable of suing for its recovery in all courts.

The judgment of the Circuit Court is reversed, and the cause remanded, with instructions to overrule the demurrer to the replication, and to permit the defendant to make up an issue thereon, if he desires so to do.

WALKER, J.: I concur in the decision of this case, as announced in the foregoing opinion; but am not prepared to hold the statute could affect title to property acquired before the passage of the law. As there is nothing in the record to show that it was not subsequently acquired, I deem it unnecessary to discuss that question. It will be time to do so if it shall be presented by a rejoinder.

*Judgment reversed.*