(No. 32484.—)

MARJORIE BRANDT, Appellant, *vs.* JOSEPH KELLER, Appellee.

*Opinion filed November 20, 1952—Rehearing denied Jan. 19, 1953.*

Joseph D. Ryan, and Louis P. Miller, both of Chicago, for appellant.

Ross, Berchem, Schwantes & Menk, of Chicago, (John C. Menk, of counsel,) for appellee.

Mr. Justice Bristow delivered the opinion of the court:

This is an appeal by plaintiff, Marjorie Brandt, from a judgment of the Appellate Court affirming the order of the superior court of Cook County, which dismissed plaintiff's action for damages against her divorced husband, defendant, Joseph Keller, for a personal tort inflicted by him while the marriage relation existed.

The sole issue presented herein is whether, under the Married Women's Act of 1874, a married woman can maintain an action for damages against her husband for personal injuries caused by his wilful and wanton misconduct.

According to the uncontroverted allegations of the complaint, the parties were estranged and met on the particular occasion only to consider divorce plans which were eventually consummated. Defendant was driving plaintiff as a guest passenger in his car, and allegedly wilfully and wantonly collided with a car coming from the opposite direction, causing plaintiff to sustain the personal injuries for which she is endeavoring to recover damages in this action.

The trial court sustained defendant's motion to dismiss plaintiff's complaint on the ground that no action may be brought by a wife to recover for a tort committed by her husband, notwithstanding the subsequent termination of the marriage. The Appellate Court, in affirming that judgment, held that, although this issue had not been conclusively determined under the Married Women's Act of 1874, (Ill. Rev. Stat. 1951, chap. 68, pars. 1 to 21,) that statute does not abrogate the husband's common-law immunity from tort actions instituted by his wife.

In determining the propriety of the Appellate Court's construction of the act, we shall review briefly the origin of the common-law rule immunizing the husband to suits by his wife, the relevant legislation affecting that rule, as construed by the Illinois courts, note the rationale and conclusions of courts of other jurisdictions construing similar statutes, and ultimately present our interpretation of the language and provisions of the applicable statute.

At common law a married woman had no separate identity before the law; she was regarded as a chattel with neither property or other rights against anyone, for her husband owned all her property and asserted all her legal and equitable rights. (*Snell* v. *Snell*, 123 Ill. 403, 407 *et seq.; Hoker* v. *Boggs*, 63 Ill. 161.) As a consequence of this status, which was founded upon the prevailing feudal economy, the rule evolved that the husband was immune to all suits by his wife, including actions for personal injuries he might inflict upon her. (30 C.J. 714.) This rule was inevitable, since any recovery on behalf of the wife in a suit against her husband would immediately have become his property, and since he alone could enforce a right of his wife, he would be, in effect, suing himself. *Welch* v. *Davis*, 410 Ill. 130.

While the common-law status of married women is merely of historical interest today, since it has been modified in varying degrees by statutes in England and in all

of the States, the rule respecting the immunity of the husband to suit by his wife has persisted in many jurisdictions, particularly with reference to torts committed by him. The vitality of the rule in each jurisdiction depends upon the construction of the statutes emancipating married women.

With reference to such legislation in Illinois, the Married Women's Act of 1861 provided, in substance, that a married woman may own, acquire and convey property, together with all rents and profits therefrom in her own right the same as though she were sole and unmarried. This statute was held to confer upon a married woman the power to do whatever is needful to the effectual maintenance of her own property, including the right to prosecute suits in her own name, without joining her husband, for recovery of the property, or for an unlawful interference with it, even against her husband. (*Emerson* v. *Clayton,* 32 Ill. 493.) However, a married woman could not, under this statute, maintain a writ of *scire facias* against her husband to compel the payment of alimony, or maintain any other type of action against him unless it be for the recovery of her own property. (*Chestnut* v. *Chestnut,* 77 Ill. 346.) In the *Chestnut case,* the court stated: "If the provisions of the common law which prohibit a husband and wife from prosecuting suits at law against each other are to be repealed, altered or modified, it must be done by legislative action * * * not * * * by judicial construction."

In 1869 the Illinois legislature enacted a statute which provided that a married woman may receive, use, and possess her own earnings, and sue for the same, provided she shall have no right to compensation for labor performed for her minor children or her husband. While the statute was deemed to further emancipate and expand the rights of married women, neither it, nor its interpretation affects the query herein.

In 1874 the rights of married women were considerably broadened in scope by a statute (Ill. Rev. Stat. 1874, chap. 68,) substantially identical with the present law. The relevant sections provided, in substance: that a married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried; that if husband and wife are sued together, the wife may defend in her own right; that a wife may make contracts and incur liabilities to the same extent and in the same manner as if she were unmarried; that the husband is not liable for his wife's torts, except in cases where he would be jointly responsible with her if the marriage did not exist; that a wife has the right to retain her earnings, but she is not entitled to compensation for labor performed for her minor children or her husband; that a wife may own, control and convey property, and the rents and profits therefrom, and that if either husband or wife unlawfully obtains or retains possession or control of property belonging to the other, either before or after marriage, the owner may maintain an action therefor, to the same extent as if he or she were unmarried. Recognition of this enlarged sphere of rights is found in the following cases: *Thomas* v. *Mueller,* 106 Ill. 36, 41; *Crum* v. *Sawyer,* 132 Ill. 443; *Johnson* v. *Johnson,* 239 Ill. App. 417; *Glennon* v. *Glennon,* 299 Ill. App. 13.

Although it has been held under this act that a married woman may contract with her husband, and sue him on contracts and on notes (*Thomas* v. *Mueller; Crum* v. *Sawyer,*) or for money spent for the support of their child (*Johnson* v. *Johnson,*) there has been no clear or conclusive determination of whether a married woman may now sue her husband for torts inflicted by him upon her. The only case involving this issue, adjudicated after the enactment of the act of 1874, is *Main* v. *Main,* 46 Ill. App. 106. That decision, however, does not refer to the act of 1874, nor purport to construe the terminology of

the act or the effect of the new rights on the common-law rule, nor analyze the extent to which the 1874 act modified or expanded the rights conferred by the act of 1861. On the contrary, the decision is predicated upon *Chestnut* v. *Chestnut,* which was decided under the 1861 act, and upon the language therein pertaining to public policy. Therefore, it has been held that the determination of the *Main case,* denying a married woman the right to sue her husband in a tort action, cannot be deemed to constitute a binding precedent on this issue. *Welch* v. *Davis,* 342 Ill. App. 69, 72; *Welch* v. *Davis,* 410 Ill. 130.

Not only is there no clear determination of this issue under the act of 1874, but there are two conflicting *dicta* appearing in the case law. In *Meece* v. *Holland Furnace Co.* 269 Ill. App. 169, the court, in denying the right of a minor child to sue his parent for a tort, observed that the situation was analogous to that of a wife suing her husband. In *Welch* v. *Davis,* 410 Ill. 130, however, the court, while predicating its decision on the Wrongful Death Act, nevertheless intimated that there is no longer any basis in law for the husband's common-law immunity from tort actions by his wife, and that it can find support only on the doubtful theory of preserving domestic tranquility. With reference thereto the court stated: "Two obstacles thus combined at common law to preclude an action by a wife against her husband. First, there was the somewhat metaphysical difficulty concerning the parties: the husband, enforcing the right of his wife as plaintiff, would be suing himself as defendant; and, second, any recovery on behalf of the wife would immediately become the property of her husband, so that the action would have been a circuitous futility. Neither of those obstacles exists today. Everywhere they have been eliminated by statutes which permit married women to own property independently of their husbands and to sue in their own name. * * * The only support upon which the husband's im-

munity rests today is one which was developed, largely as an afterthought, to maintain the common-law immunity after its original justifications had been wiped out. Today the immunity can be based solely upon the ground that domestic tranquility is fostered by the prohibition of actions by a wife against her husband."

In addition to this *dicta* in the *Welch case,* it may be noted that the decision itself reveals a disposition to limit the doctrine of the husband's common-law immunity from tort actions by his wife. The court held therein that under the Wrongful Death Act (Ill. Rev. Stat. 1951, chap. 70, par. 1,) the administrator of the husband's estate was liable to the dependent heirs of the wife whose death was caused by her husband, irrespective of whether the wife could have recovered against her husband or his estate if she had survived the injury. The court relied not only upon the terms of the Wrongful Death Act, but upon the noted New York case of *Schubert* v. *Schubert Wagon Co.* 249 N.Y. 253, and the Pennsylvania case of *Kaczorowski* v. *Kaczorowski,* 321 Pa. 438, 104 A.L.R. 1267.

Another limitation on the common-law rule was effected in *Tallios* v. *Tallios,* 345 Ill. App. 387, where the court held that a wife could maintain an action against her husband's employer for injuries caused by her husband's negligence while she was riding in a truck driven by him in the furtherance of his employer's business, irrespective of whether the husband could have been sued by his wife for his negligent acts.

Among the jurisdictions where the issue of the husband's tort liability to his wife has been specifically adjudicated, the decisions are in conflict, and have inspired considerable legal research. 43 Harvard L. Rev. 1030, McCurdy, "Torts Between Persons in Domestic Relations;" 28 North Carolina Law Rev. 109; Insurance Law Journal, Dec. 1946, p. 911, "What Price Marriage;" 48 Columbia Law Rev. 961.

It has been stated that a majority of courts still adhere to a modification of the common-law rule whereby a husband is immune only from tort actions by his wife. (89 A.L.R. 118; 160 A.L.R. 1402.) However, an increasing number of courts, reflecting perhaps the present trend of judicial opinion, have construed statutes granting married women separate legal identity, and the right to own property, as implying a right to institute all types of actions against their husbands as well as against other persons. (*Johnson* v. *Johnson*, 201 Ala. 41, 77 So. 335; *Katzenberg* v. *Katzenberg*, 183 Ark. 626; *Rains* v. *Rains*, 97 Colo. 19; *Brown* v. *Brown*, 88 Conn. 42, 89 Atl. 889; *Lorang* v. *Hays*, 69 Ida. 440; *Gilman* v. *Gilman*, 78 N.H. 4; *Roberts* v. *Roberts*, 185 N.C. 566, 118 S.E. 9; *Fiedler* v. *Fiedler*, 42 Okla. 124; *Prosser* v. *Prosser*, 114 S.C. 45; *Scotvold* v. *Scotvold*, 68 S.D. 53; *Wait* v. *Pierce*, 191 Wis. 202; Jacobs, Cases on Domestic Relations, 3d ed. 1952, p. 616; Harper, Problems of the Family, 1952 ed., p. 554.) However, inasmuch as the question in each jurisdiction is essentially one of statutory construction (160 A.L.R. 1407,) unless the terms of the statutes are identical the decision of a particular jurisdiction is of limited value. Moreover, while courts verbalize about statutory construction, they frequently retreat under the protection of that nebulous concept "public policy," and piously chant that tort actions between spouses would destroy "domestic tranquillity," while at the same time giving approbation to criminal proceedings instituted by spouses against each other, and to actions on contracts or property rights between spouses.

The fallacy of this public policy rationale has been expostulated by numerous jurists. (*Brown* v. *Brown*, 88 Conn. 42, 89 Atl. 889; *Lorang* v. *Hays*, 69 Ida. 440; *Crowell* v. *Crowell*, 180 N.C. 516.) It is ably expressed by the dissenting opinion in *Mertz* v. *Mertz*, 271 N.Y. 466, 3 N.E. 2d 597, wherein it was stated: "It is enough to say

that the rule exists merely as a product of judicial interpretation, is vestigial in character, and embodies no tenable policy of morals or social welfare. To urge that it survives because it is an aid to conjugal peace disregards reality. Conjugal peace would be as seriously jarred by an action for breach of contract or on a promisory note or for an injury to property, all of which the law permits, as by one for personal injury." It would seem that when one spouse assails another or brings suit, there is not much domestic tranquility left to disrupt.

Other courts stress the danger of collusion in tort actions between spouses, and hold that consequently such actions are against public policy. `(*Thompson* v. *Thompson,* 218 U.S. 611.) However, the potentiality of collusion, or of the perversion of the administration of justice exists in all litigation, and cannot properly constitute legal grounds for construing a statute in an abortive manner, nor be a determinative factor in construing rights. (*Heck* v. *Schupp,* 394 Ill. 296; see Justice Harlan's dissent in *Thompson* v. *Thompson.*) Nor does the fact that an insurance company may be the real defendant in interest in such cases constitute a ground for barring the action. In fact, this type of liability constitutes an additional risk which may be insured against, and would ultimately redound to the benefit of the insurer, rather than against its interest.

From the foregoing analysis it is evident that we must construe the act of 1874 shorn of these superficial public policy arguments, and without the doubtful benefits of the interpretations of other courts of statutes with varying terminology. The Appellate Court has conscientiously endeavored to do this, but we cannot concur with its rationale or conclusions.

The alleged right of a married woman to institute a tort action against her husband is predicated upon the following provision in the act of 1874 (sec. 1) : "That a

married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried, and an attachment or judgment in such action may be enforced by or against her as if she were a single woman." At the time of the enactment of this provision, as hereinbefore noted, the courts had construed the acts of 1861 and 1869 to permit a married woman to sue her husband as well as third persons, without joining him, where it was necessary to protect her own property. (*Emerson v. Clayton,* 32 Ill. 493.) However, a married woman was not permitted to institute any other type of action against her husband. (*Chestnut* v. *Chestnut,* 77 Ill. 346.) It may be assumed, therefore, that the legislature intended to expand the rights of a married woman to sue and be sued, otherwise there would have been no purpose for the inclusion of the phrase "in all cases."

The Appellate Court herein concluded that the phrase "in all cases," when construed with the phrase "without joining her husband," designated actions against third persons, rather than actions against her husband. We do not find such a limitation under our analysis of the terms of the statute. The words "in all cases" must be interpreted according to their natural meaning, without the interpolation of additional exceptions. (*Illinois Central Railroad Co.* v. *Village of South Pekin,* 374 Ill. 431; *American Surety Co.* v. *Jones,* 384 Ill. 222, 231.) The provision does not state "in all cases except tort suits by or against her husband;" nor does it refer to all cases arising under the new rights specifically granted in other sections of the act. Nor can such a restriction be implied.

Moreover, if the words "in all cases" be limited to actions against third persons, then by what right is the married woman entitled to sue her husband in contract cases? A married woman is merely authorized to contract and incur liabilities; there is no provision specifically authorizing her to contract with her husband, or specifically

abrogating his common-law immunity from suit by his wife on such contracts. Nevertheless, it is clearly established that a wife may sue her husband in a contract action under the act of 1874. (*Thomas* v. *Mueller,* 106 Ill. 36.) It is logical, therefore, that if a married woman can assert contract rights against her husband without any specific statutory mandate other than the foregoing provision allowing her to sue "in all cases," she should be able to assert tort rights against her husband under that same general provision. The statute cannot be construed to abrogate a husband's common-law immunity from suit by his wife for contract purposes, and be construed to perpetuate his immunity for another purpose.

The Married Women's Act of 1874 is an enabling act, and, although it is in derogation of the common law, it is the settled policy of this court that it must be given a liberal construction to effectuate the manifest intention of the legislature. *Clark* v. *Clark,* 49 Ill. App. 163; *Haight* v. *McVeagh,* 69 Ill. 624; *Chicago, Burlington and Quincy Railroad* v. *Dunn,* 52 Ill. 260.

Under our interpretation, the provision in question reflects a legislative intent to establish the separate identity of a married woman in all litigation, and to remove all her common-law disability with reference to suing and being sued, so that she will be placed in the same status "as if she were unmarried." It is our province to effectuate this purpose by construing the phrase "in all cases" literally, so as to include all actions against all persons, including her husband, rather than to interject exceptions or give a restrictive interpretation to the statutory provision which would merely perpetuate a vestigial concept based upon the abrogated common-law rule that a married woman's rights and property belong to her husband.

In our view, any other interpretation would constitute judicial legislation, and construe away changes made by a remedial statute. (Dissenting opinion delivered by Justice

Harlan, and concurred in by Justices Holmes and Hughes in *Thompson* v. *Thompson,* 218 U.S. 611.)

This court is cognizant of the problems with reference to the items of damage in a married woman's tort action against her husband. It will be the province of the court in such cases to properly instruct the jury so that items of expense for which the husband is already liable may not be computed as further damages.

On the basis of this analysis, it is our judgment that the Appellate Court erred in affirming the judgment of the superior court of Cook County, which dismissed plaintiff's complaint on the ground that it did not state a cause of action. Hence, the judgments of the Appellate Court and of the superior court of Cook County are reversed, and the cause remanded, with directions to reinstate the complaint.

*Reversed and remanded, with directions.*

CRAMPTON, C.J., and HERSHEY, J., dissenting.