74

JANET SOEDLER, Plaintiff-Appellant, *v.* MELVIN SOEDLER, Defendant-Appellee.

Third District    No. 80-13

Opinion filed October 7, 1980.

George Mueller, of Hoffman & Mueller, of Ottawa, for appellant.

Craig M. Armstrong and Bernard L. Engels, both of Craig Armstrong & Associates, of Ottawa, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by plaintiff Janet Soedler from the order of the Circuit Court of La Salle County granting defendant Melvin Soedler's motion to dismiss her personal injury tort action against him. The court dismissed the action on the basis of section 1 of "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1979, ch. 40, par. 1001, formerly Ill. Rev. Stat. 1977, ch. 68, par. 1), which states in pertinent part:

"* * * neither husband nor wife may sue the other for a tort to the person committed during coverture."

On this appeal, plaintiff raises the issue of whether this interspousal tort immunity provision bars an action where the husband and wife are separated and living apart. She argues that the immunity does not apply to such a situation.

The facts, for our purposes at this time, are that the parties had been married sometime prior to and on October 4, 1977, and had also separated prior to that time. No legal separation had been obtained but they were living apart. Janet Soedler returned to the marital residence on October 4, 1977, to get some of her personal effects. While she was there Melvin Soedler, according to the allegations in the complaint, shot her. As a result, a three-count personal injury action was filed by Janet Soedler in

the circuit court. In it were two counts of willful and wanton conduct and a negligence count. Defendant Melvin Soedler thereafter filed a motion to dismiss (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i)), premised upon the statutory provision setting forth interspousal tort immunity. A hearing was held, and the circuit court entered its order of dismissal, finding that the parties were husband and wife at the time of the alleged tort and that therefore the immunity provision controlled. Appeal from that ruling was taken and is now before this court.

A brief review of spousal tort immunity is in order. In 1953, the Illinois Legislature, in response to the Illinois Supreme Court opinion in *Brandt v. Keller* (1952), 413 Ill. 503, 109 N.E.2d 729, amended the Married Woman's Act so as to re-establish interspousal tort immunity. In *Brandt v. Keller*, the supreme court determined (1) that the 1874 Married Woman's Act abrogated the common law doctrine of a husband's immunity from tort suit by his wife and (2) that the legislature had intended by that Act to permit a married woman to sue her husband in tort for injuries suffered during the marriage. In response, the 1953 amendment was added, which stated:

> "Provided, that neither husband nor wife may sue the other for a tort to the person committed during coverture." (Ill. Rev. Stat. 1953, ch. 68, par. 1.)

That provision is now found in chapter 40 of the statutes (Ill. Rev. Stat. 1979, ch. 40, par. 1001). The constitutionality of the establishment of interspousal tort immunity was attacked in *Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, 166 N.E.2d 571, with the Illinois Supreme Court upholding the statutory provision at issue. (19 Ill. 2d 195; *Wartell v. Formusa* (1966), 34 Ill. 2d 57, 213 N.E.2d 544; *Herget National Bank v. Berardi* (1975), 31 Ill. App. 3d 608, 335 N.E.2d 39.) In *Heckendorn*, the court specifically rejected constitutional attacks based upon the due process clause and upon section 19 of article II of the Illinois Constitution. Appellant's constitutional argument in this case, premised upon section 12 of article I of the 1970 Illinois Constitution, the successor to section 19 of article II in the old constitution, is controlled by the *Heckendorn* decision. 19 Ill. 2d 190, 194; *Tyrken v. Tyrken* (1978), 63 Ill. App. 3d 199, 379 N.E.2d 804.

The only situations found to be outside of the provision for spousal tort immunity are those involving third parties. Thus, it is established that actions in Wrongful Death to recover for the benefit of surviving children are not barred by the immunity. (*Bradley v. Fox* (1955), 7 Ill. 2d 106, 129 N.E.2d 699; *Welch v. Davis* (1951), 410 Ill. 130, 101 N.E.2d 547.) Then, in *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 396 N.E.2d 528, the Illinois Supreme Court held that the immunity established by the 1953 amendment did not bar suit, but rather that it provided the tortfeasor

spouse with a defense, that of immunity, which could be raised as a defense and which could also be waived. (77 Ill. 2d 384, 390.) Under the circumstances of the case and the insurance policy at issue, the court concluded that a wife could recover from her husband's insurance carrier, in a direct action against the carrier, under the uninsured motorist provisions of the liability policy. (77 Ill. 2d 384, 390-91.) Neither of these exceptional situations, outside the doctrine of interspousal tort immunity, is before us in the instant case.

In the instant case, plaintiff filed suit against her former husband for a tort allegedly committed while they were still married. This is the classic situation involved in the use of the immunity provision as a defense. The plaintiff argues that the law must look to the *de facto* situation of the parties and not to their legal relationship. She argues that, in fact, the marriage had "broken down" and the parties had gone their separate ways. Yet, the legislature by the 1953 amendment clearly focused upon the legal status of being married, without consideration of *de facto* arrangements which might develop within the legal bonds of matrimony. Such a decision on their part may have been influenced by the obviously impossible task, given the current state of our culture and its male-female relationships, of making judicial determinations concerning the *de facto* existence of a given marriage relationship at a given point in time. Regardless of their motivation, the legislature stated that immunity exists during "coverture." We find that this was their archaic way of saying "during the marriage."

The term "coverture" originally denoted the legal status of a married woman (*Osborn v. Horine* (1857), 19 Ill. 123, 125), who, at that time, was totally dependent upon her husband. The term had even earlier been recognized as being essentially synonymous with marriage. Lord Coke in his Institutes noted that the legal import of the words "during coverture" meant "while the marriage lasts." (Lord Coke, 1 Inst. 149.) This essential identity was recognized by the Illinois Supreme Court in *Heckendorn*, wherein the court treated "coverture" as synonymous with the marriage relationship. Most recently, considering the term under a different though related statutory scheme, the First District held that the terms "coverture" and "marriage" are synonymous. (*People v. Dubanowski* (1979), 75 Ill. App. 3d 809, 811, 394 N.E.2d 605.) The court there was concerned with the legislature's use of the term in the marital privilege statute (Ill. Rev. Stat. 1975, ch. 38, par. 155—1). Given this history of the term "coverture" and its use by the legislature, we conclude that the legislature used the term in the statutory provision establishing interspousal tort immunity to mean "marriage." Thus, "during coverture" means "during the marriage" in section 1 of "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1979, ch. 40, par. 1001).

Marriage in Illinois is the state of being legally married, and that legal status terminates upon death, dissolution of the marriage or annulment of the marriage. In the instant case, the parties were married at the time of the alleged tort and both were thus clothed with interspousal tort immunity. We are bound by the terms of the Act. Modification or repeal of the interspousal act referred to is a problem for the legislature. Accordingly, the decision of the Circuit Court of La Salle County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.