STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, *v.* MARY JANE PALMER *et al.*, Defendants-Appellants (Frank W. Palmer, Defendant-Appellee).
MARY JANE PALMER, Plaintiff-Appellant, *v.* FRANK W. PALMER, Defendant-Appellee (Fon du Lac Township, Defendant).

Third District Nos. 3—83—0163, 3—83—0177, 3—83—0268, 3—83—0188, 3—83—0308 cons.

Opinion filed April 16, 1984.

James L. Hafele, P.C., of Peoria, for appellant Mary Jane Palmer.

Maximilian M. Prusak, of Prusak & Winne, of Peoria, for appellant Fon du Lac Township.

Robert D. Jackson and Jeffrey W. Jackson, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee State Farm Mutual Automobile Insurance Company.

James A. Martinkus, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellee Frank W. Palmer.

JUSTICE BARRY delivered the opinion of the court:

At the heart of the five appeals here consolidated lie the simplicity of the vows of matrimony, the complexities of marriage and a contract entered into by the married couple, and, unfortunately, the bitter litigation that too often accompanies the destruction of the marital union. Mary Jane and her husband, Frank Palmer, were still residing together in their Champaign home on September 12, 1981, despite some marital discord. They travelled together to Peoria on that date to attend a wedding anniversary celebration. That evening, on their way to Frank's father's home in East Peoria, while Frank was at the

wheel of their 1980 Rabbit auto and Mary Jane was seated in the front passenger seat, Frank exacted from Mary Jane a confession that she had had extramarital relations with her boss. Angry words were exchanged, Frank hit Mary Jane, and the auto hit a bridge abutment on Farmdale Road in Tazewell County. The extent of the physical confrontation between the Palmers subsequent to the accident is a matter of considerable dispute. In any event, Mary Jane had suffered two fractured neck vertebrae, a bent partial dental plate, and a broken leg by the time she was removed from the car and delivered to the hospital for treatment. At the time of the accident the Rabbit was covered by an automobile liability insurance policy with State Farm Mutual Automobile Insurance Company issued in Mary Jane's name.

A flurry of lawsuits ensued, including an action for the dissolution of the Palmers' marriage; a suit by Frank against Mary Jane's paramour for alienation of affections; a suit by Mary Jane against Frank for negligence and battery, later amended to include Fon du Lac Township for negligence; a countersuit by Fon du Lac Township against Frank for indemnity and contribution; and a suit by State Farm against Mary Jane, Frank and Fon du Lac Township for declaratory judgment. The dissolution and alienation of affections actions are not before us. The remaining lawsuits are.

In the suit brought by Mary Jane against Frank, the trial court granted Frank's motion for summary judgment with respect to the count sounding in negligence, based on Frank's assertion of the defense of interspousal immunity. With respect to the intentional tort count, the court denied Frank's motion. In the insurer's declaratory judgment cause, the court held that, by force of the household exclusion clause, Mary Jane's auto insurance policy afforded no liability coverage for Frank as a defendant in Mary Jane's suit against him or for contribution. The trial court certified the case for immediate appeal pursuant to Supreme Court Rules 304(a) and 308(a) (73 Ill. 2d Rules 304(a), 308(a)).

As aforesaid, five appeals are before use for our review. In Nos. 83—163, 83—177 and 83—188, Mary Jane, Frank, and Fon du Lac Township uniformly complain that the trial court erred in declaring that the Palmers' insurance policy afforded no liability protection for Frank either as a defendant in Mary Jane's suit or for contribution and indemnity in Fon du Lac's countercomplaint against Frank. In No. 83—268, Frank contends that the trial court erred in denying his motion for summary judgment with respect to the intentional tort count of Mary Jane's complaint. And in No. 83—308, Mary Jane contends that the trial court erred in granting Frank's motion for sum-

mary judgment with respect to her negligence cause of action against him.

We consider in the first instance the issues raised by Mary Jane: (1) whether Frank's assertion of interspousal immunity bars Mary Jane's negligence cause of action against him; (2) whether Frank's waiver of the conflict of interest created by his insurer's defending him was made with Frank's knowledgeable consent; and (3) whether State Farm's "family exclusion" clause in Mary Jane's liability insurance policy precludes coverage for Frank in the claims filed by Mary Jane and Fon du Lac Township.

■ Initially, we must reject persuasive arguments advanced on behalf of Mary Jane that the doctrine of interspousal immunity violates constitutional rights and contravenes modern realities. The Illinois legislature has seen fit to retain the defense as a codification of the public policy of this State. (Ill. Rev. Stat. 1981, ch. 40, par. 1001.) Interspousal immunity is not unconstitutional on due process or equal protection grounds (*Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, 166 N.E.2d 571).

Nor does the doctrine violate the privileges and immunities clause of the Federal Constitution. The right to recover or debar recovery in tort from one's spouse is not a fundamental "privilege" or "immunity" bearing upon the vitality of the nation such that Illinois must conform its laws to treat all citizens, whether resident or nonresident, equally. Thus, the mere fact that the doctrine of interspousal immunity has been abrogated in the great majority of States on public policy grounds does not, *ipso facto*, invalidate the statutory defense in Illinois.

■ Next Mary Jane argues that interspousal immunity applies only during "coverture." Since she was residing with Frank by force of his intimidation rather than his protection and affection, she contends that coverture did not exist in the marital home. While we certainly recognize the inapplicability of one of the bases for enacting interspousal immunity (*i.e.*, to encourage, promote and maintain marital harmony) to the unfortunate situation giving rise to the negligence cause of action herein, we are not persuaded thereby that "coverture," as that term is used in "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1981, ch. 40, par. 1001), means anything more than "marriage." (See *Soedler v. Soedler* (1980), 89 Ill. App. 3d 74, 76, 411 N.E.2d 547, 548.) Mary Jane and Frank's marriage, while not harmonious at the time of the accident, had not been dissolved. Since the personal injury negligence cause of action against Frank involved "a tort to the person committed during coverture

[marriage]," the interspousal immunity defense was available as a procedural bar to count I (negligence) of Mary Jane's complaint.

▮ We have reviewed the record on appeal and find that the questions of a possible conflict of interest and Frank's waiver of that conflict were adequately explored and resolved in the trial court. We have no doubt that Frank intended to use the statutory immunity available to him as a personal defense to Mary Jane's lawsuit to deprive her of any recovery for her injuries. In this case, State Farm, while agreeing to pay for independent defense counsel selected by Frank, had the same interest as Frank in avoiding Mary Jane's negligence cause of action. Frank's waiver of his attorney's possible conflict of interest and his assertion of the personal defense was made as knowledgeably and as intelligently as could be hoped for under the circumstances. For the foregoing reasons we hold that the trial court correctly granted summary judgment for Frank and against Mary Jane on count I of her complaint, sounding in negligence.

We turn next to Mary Jane's contention that State Farm's family exclusion clause is invalid because it is overbroad, in contravention to Illinois public policy, and ambiguous. The clause in question is contained under "Section I—Liability—Coverage A" and the paragraph entitled "When Coverage A Does not Apply." It reads as follows:

> "In addition to the limitations of coverage in 'Who Is An Insured' and 'Trailer Coverage' THERE IS NO COVERAGE ... FOR ANY *BODILY INJURY* TO: ... ANY MEMBER OF THE FAMILY OF THE *INSURED* RESIDING IN THE SAME HOUSEHOLD AS THE *INSURED*, The term 'insured' as used here means the *person* against whom claim is made or suit is being brought."

Mary Jane argues that the trial court's judgment in favor of State Farm is overbroad because it declared noncoverage with respect to Fon du Lac Township's countercomplaint against Frank. She also contends that the exclusion clause itself is overbroad and ambiguous because it extends to family members residing in the insured's household without precisely defining the boundaries of a familial relationship. Frank joins Mary Jane's position, adding that ambiguity can be found by referring to "Section II—Medical Payments—Coverage C" which does not exclude family members.

▮ As conceded by State Farm, the trial court's declaratory judgment in favor of the insurer extends only to the enforcement of "Section I—Liability—Coverage A." Liability coverage under the section at issue is specifically and unambiguously excluded with respect to Mary Jane's direct suit against Frank. The court's order does not

preclude, however, any other recovery which may be available to Mary Jane under other sections of the policy which might apply. Furthermore, Fon du Lac's inability to recover from Frank's insurer on its countercomplaint does not preclude it from prosecuting its cause of action against Frank. Any issues respecting insurance coverage other than "Liability Coverage A" are not before us. We reject Mary Jane and Frank's arguments that the trial court's order is overbroad.

The contractual exclusion does not violate the public policy of this State. Mary Jane's public policy arguments are essentially adopted by Fon du Lac Township and were addressed and resolved in favor of State Farm in *State Farm Mutual Automobile Insurance Co. v. Suarez* (1982), 104 Ill. App. 3d 556, 432 N.E.2d 1204.

In *Suarez*, as here, the insureds were husband and wife who sought to recover damages from an allegedly negligent third party. In *Suarez*, the third party, Ingles, was the driver of the car with which the Suarez vehicle collided. Ingles countersued for contribution from Victor, who drove the Suarez car, on grounds that he was partially responsible for his wife's (Estrella's) injuries. The Suarez' policy of insurance contained the same "family exclusion clause" that appears in the policy before us. State Farm, as here, filed a declaratory judgment action denying that the Suarez' insurance policy afforded liability coverage to Victor for the contribution claim. Summary judgment was granted in favor of State Farm, the court ruling that the clause at issue was clear and unambiguous, not in violation of Illinois public policy and finding further that State Farm was not obligated to indemnify Victor for any judgment obtained by Ingles in the contribution suit.

In our opinion, the *Suarez* decision adequately disposes of all remaining arguments of merit advanced by Mary Jane, Frank and Fon du Lac Township urging reversal of the trial court's award of summary judgment for State Farm in the declaratory judgment action. We need not replow the grounds stated in *Suarez* to affirm the trial court's judgment. Suffice it to say, we adopt the *Suarez* reasoning.

The final issue before us in these appeals was advanced by Frank: whether recent amendments to section 1 of "An Act to revise the law in relation to husband and wife" (Ill. Rev. Stat. 1981, ch. 40, par. 1001)—*i.e.*, Public Act 82—569 and Public Act 82—783—are substantive changes which must be applied prospectively so as to require dismissal of Mary Jane's intentional tort cause of action based on Frank's interspousal immunity defense.

The statute in effect on the date of the accident stated simply "that neither husband nor wife may sue the other for a tort to the

person committed during coverture." (Ill. Rev. Stat. 1979, ch. 40, par. 1001.) To that sentence, Public Act 82—569, reenacted by the 1982 Revisory Act, Public Act 82—783 (1982 Ill. Laws 288) added "other than an intentional tort." Public Act 82—569 has an effective date of September 24, 1981. The incident giving rise to Mary Jane's count II, sounding in intentional tortious misconduct, accrued on September 12, 1981. Mary Jane's complaint was filed on December 18, 1981. The crux of Frank's argument on appeal is that the amendatory act affects a matter of substantive law and may apply only to actions accruing subsequent to the date of enactment. We cannot agree.

In *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 396 N.E.2d 528, our supreme court concluded "that the effect of the 1953 amendment [codifying interspousal immunity] was not to destroy the cause of action of the injured spouse, but to confer immunity on the tortfeasor spouse, *which like a defense based upon the statute of limitations can be waived by the defendant spouse.*" (Emphasis added.) (77 Ill. 2d 384, 390, 396 N.E.2d 528, 531.) Subsequent appellate decisions have interpreted *Elkins* to mean that interspousal immunity is now a *procedural,* rather than substantive, defense. (*Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 1077, 430 N.E.2d 236, 239; *Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 435 N.E.2d 221; *Farmers Insurance Group v. Nudi* (1982), 108 Ill. App. 3d 151, 438 N.E.2d 1260.) Thus interpreted, *Elkins* cast doubt on the precedential value of *Heckendorn v. First National Bank* (1969), 19 Ill. 2d 190, 166 N.E.2d 571, in which the court held that interspousal immunity operated as a *substantive,* rather than procedural, bar to a widow's claim against her husband's estate. In any event, recent appellate decisions have held that claims by third parties for contribution are not barred by the interposition of the interspousal immunity defense by an insurer of the allegedly negligent spouse. *Wirth; Larson; Nudi.*

In our opinion, these recent appellate decisions, grounded on an interpretation of *Elkins* to the effect that interspousal immunity is a procedural defense, comport with the public policy underpinning the common law doctrine. If "domestic tranquility" or preservation of marital harmony are to be achieved by enforcing interspousal immunity, then, by construing the statutory defense as procedural and permitting the tortfeasor spouse to waive its effect, the injured spouse may nonetheless recover for injuries and, hopefully, alleviate unnecessary marital stress where the payor of damages may be a third party, as opposed to the tortfeasor spouse himself.

The guidance we find in *Elkins* and its progeny, however instructive, does not bear directly on the question before us today. The deter-

mination of whether a statutory amendment may be applied retroactively or prospectively only is primarily a question of legislative intent. *Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 78, 452 N.E.2d 847, 849, citing *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, 447 N.E.2d 408.

■ We do not have the benefit of the legislators' comments to Senate Bill 115 of the 1981 regular session, "An Act relating to interspousal torts" (enacted as Pub. Act 82—569). Nonetheless, Public Act 82—569, section 3, recites "This amendatory Act shall take effect upon becoming law." We glean from this that the legislature intended an earlier, rather than later, effective date, since the legislators' silence on an effective date would have dictated a January 1, 1982, effective date. By adding section 3, the legislators ensured that the new law would take immediate effect upon the governor's signature of approval. (See Ill. Const. 1970, art. IV, sec. 10; Ill. Rev. Stat. 1981, ch. 1, par. 1201.) Inasmuch as interspousal immunity is now generally viewed as procedural, and there is no specific legislative intent to implement the amendatory act on a prospective basis only, we find no error in the trial court's determination that Mary Jane's cause of action for intentional tort (count II) survives Frank's assertion of the immunity defense.

In so ruling, we are not bound by a rigid "procedural" versus "substantive" formula. Modern jurists look beyond the apparent simplicity of semantic dichotomies to achieve a fair and reasonable result. As observed by Justice Mils in *Champaign County Nursing Home v. Petry Roofing, Inc.* (1983), 117 Ill. App. 3d 76, 79-80, 452 N.E.2d 847, 850:

> "Whether retroactive application of legislation is permissible is not dependent on such outmoded distinctions as whether vested or nonvested rights are affected, or whether a statute affects rights or merely affects remedies. Rather, such cases must be decided on the basis of whether basic concepts of justice, fairness and equity militate for or against the retroactive application of the statute to a particular class of persons. Generally, retroactive statutes which courts have declared invalid have been deemed 'oppressive, impolitic, unjust, arbitrary, do substantial injury, are unreasonable, wanting in equity, [and] inconsistent with "the prevailing views of justice." ' (Smith, *Retroactive Laws and Vested Rights*, 5 Tex. L. Rev. 231, 247-48 (1927).) *** The competing interests of the affected persons must be carefully weighed in order to arrive at a just result. See Smith, *Retroactive Laws and Vested Rights II*, 6 Tex. L.

Rev. 409, 427, 431 (1928); see also *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, 242-43, 447 N.E.2d 408, 416 (Ryan, J., concurring)."

In our opinion, the interests and reasonable expectations of the injured plaintiff, allegedly the victim of a battery at the hands of her husband, outweigh the defendant's expectation that legislation enacted subsequent to the incident but prior to the filing of her complaint would not deprive him of an opportunity to defeat his wife's direct suit by virtue of the legislative act. Furthermore, our holding today is not inconsistent with the historically cited public policy bases for the doctrine of interspousal immunity—the primary one being to promote domestic tranquility and a secondary one being to guard against the danger of collusion by the married parties. As cogently observed by the court in *Brandt v. Keller* (1952), 413 Ill. 503, 109 N.E.2d 729, neither of these stated concerns can be said to have been served in a situation where, as here, an intentional tort claim arises during the final throes of a marriage. "When one spouse assails another or brings suit, there is not much domestic tranquility left to disrupt. *** [T]he potentiality of collusion, or of the perversion of the administration of justice exists in all litigation, and cannot properly constitute legal grounds for construing a statute." 413 Ill. 503, 511, 109 N.E.2d 729, 733.

For the foregoing reasons, we affirm the judgments of the trial court with respect to each issue raised in these appeals and remand this cause for further proceedings.

HEIPLE and SCOTT, JJ., concur.