SAFECO INSURANCE COMPANY, Plaintiff-Appellant, v. FRANCIS SECK *et al.*, Defendants-Appellees.

Second District   No. 2—91—0449

Opinion filed February 20, 1992.

James F. Best and Kurt G. Beranek, both of Fraterrigo, Best & Beranek, of Chicago (William J. Floriano, of counsel), for appellant.

May & Buege, Ltd., and Querrey & Harrow, Ltd., both of Waukegan, and Brandt & Cox, P.C., of Lake Villa (Robert M. Buege and Ronald E. Brandt, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

This appeal arises out of a declaratory judgment action brought by plaintiff, Safeco Insurance Company, in order to determine its rights and obligations in a personal injury lawsuit filed by Marie Seck against her husband, Francis Seck. Plaintiff disputes the order of the circuit court of Lake County granting defendants' motions for summary judgment declaring that Safeco Insurance Company owed Francis Seck duties of defense and indemnification up to the policy liability limit of $300,000. Plaintiff's motion for summary judgment was denied. Plaintiff denies that these duties are owed to defendant because the insurance policy contained a family exclusion clause. We reverse.

On August 19, 1988, Francis Seck and his wife, Marie Seck, were involved in an automobile accident. Marie subsequently filed a personal injury action against Francis. Plaintiff filed a declaratory judgment action seeking a finding that a family exclusion clause in Francis' insurance policy excluded coverage for damages sought by Marie. The trial court rejected plaintiff's argument and found that the family exclusion in plaintiff's insurance contract was void because it was contrary to Illinois public policy as expressed by the legislative abrogation of interspousal immunity in the Illinois Rights of Married Women Act (the Married Women Act) (Ill. Rev. Stat. 1987, ch. 40, par. 1001). Thus, the court held that plaintiff owed Francis duties of defense and indemnification up to the $300,000 liability limit of the insurance policy.

The central issue presented for review is whether the abrogation of interspousal tort immunity invalidates the family exclusion clause in plaintiff's automobile insurance policy. The facts of this case are not in dispute. We are asked to address a legal question involving the construction of a provision of an insurance contract in relation to State law. Therefore, our determination may be made on review inde-

pendent of the trial court's judgment. *Dairyland Insurance Co. v. Linak* (1991), 208 Ill. App. 3d 892, 895.

Plaintiff issued an automobile liability insurance policy to Francis Seck in November 1977. This policy was renewed in May 1988. It contained a single limit liability coverage of $300,000 per accident. The policy issued to defendant contained the following coverage exclusion:

"EXCLUSIONS: This policy does not apply under the Liability Section:

\* \* \*

(d) to any person for bodily injury to anyone related to that person by blood, marriage or adoption who is a resident of the same household. This includes a ward or foster child."

The trial court reasoned that this exclusion was void as against public policy in light of the Married Women Act, which explicitly abrogated interspousal tort immunity effective January 1, 1988 (Ill. Rev. Stat. 1987, ch. 40, par. 1001). The court further found that the trend of the law has been to find family exclusions in liability policies to be void as against various other public policies.

Plaintiff argues that the trial court should not have invalidated the family exclusion clause in Francis Seck's insurance policy because: (1) family exclusion clauses have been upheld in Illinois and other jurisdictions; (2) principles of statutory construction and interpretation dictate that the exclusion clause is not affected by the Married Women Act; (3) the family exclusion clause does not violate the public policies inherent in the Illinois financial responsibility act (see Ill. Rev. Stat. 1987, ch. 95½, par. 7—100 *et seq.*); (4) the family exclusion clause does not violate public policies inherent in the Illinois mandatory insurance statute; and (5) invalidation of the family exclusion clause impairs vested contractual rights. Defendants address these same issues in support of their position that the court below did not err. We will also address these issues with the exception that we do not find it necessary to examine the laws of jurisdictions outside of Illinois in order to resolve this dispute, nor do we find it necessary to discuss matters of vested contractual rights in light of our holding on the remaining dispositive issues.

▪ Illinois' courts have traditionally upheld the validity of automobile insurance provisions containing a family exclusion clause. (*Severs v. Country Mutual Insurance Co.* (1982), 89 Ill. 2d 515; *Allen v. State Farm Mutual Automobile Insurance Co.* (1991), 214 Ill. App. 3d 729; *Economy Fire & Casualty Co. v. Green* (1985), 139 Ill. App. 3d 147; *State Farm Mutual Automobile Insurance Co. v. Palmer* (1984), 123 Ill. App. 3d 674; *Banner Insurance Co. v. Avella* (1970), 128 Ill.

App. 2d 471.) The purpose of an exclusionary clause is to avoid the possibility of collusive claims in a close, overly friendly and intimate relationship between family members. (*Banner*, 128 Ill. App. 2d at 475.) A clear and unambiguous family exclusion clause will be applied as written unless it contravenes public policy. (*Severs*, 89 Ill. 2d at 521.) It is generally held that, "in the absence of a statutory provision to the contrary, automobile liability policy provisions excluding household and family members from coverage are valid and effective." *Severs*, 89 Ill. 2d at 521.

■ The only explicit statutory limitation of family exclusion clauses is section 143.01 of the Illinois Insurance Code, which provides that a family exclusion clause is inapplicable when a third party acquires a right of contribution against a family member of the injured person or when the insured's vehicle was driven by a person who was not in the insured's household. (Ill. Rev. Stat., 1984 Supp., ch. 73, par. 755.01.) The question before us today is whether the abrogation of interspousal immunity is an expression of public policy which further limits the applicability of family exclusion clauses.

We believe this question is answered by examining the plain language of the Married Women Act. Nevertheless we begin with a brief historical overview in order to show that our holding is not contrary to the general policy underlying the abrogation of interspousal immunity.

At common law, spouses could not sue one another because they were considered to be a single entity. (*Clark v. Clark* (1892), 49 Ill. App. 163.) In 1861, an act was passed entitled "An Act to protect married women in their separate property." (1861 Ill. Laws 143 (§1).) The intent of the Act was to protect the property of a married woman, by removing such property from the control of her husband and making her a single woman with regard to such property. (*Emerson v. Clayton* (1863), 32 Ill. 493.) The *Emerson* court went on to state that the commencement and prosecution of suits for the recovery of property could be brought by a married woman against her husband. *Emerson*, 32 Ill. at 498.

In subsequent years, the legislature enlarged the powers and relations of husband and wife, and the courts followed suit. "The Husband and Wife Act of 1874 for the first time established the general right of the married woman to sue and be sued." (Ill. Ann. Stat., ch. 40, par. 1001, Historical & Practice Notes, at 180 (Smith-Hurd 1980).) In *Thomas v. Mueller* (1883), 106 Ill. 36, our supreme court stated that it was manifest from the 1874 act that the legislature intended to empower spouses to contract with each other and sue one another on

such contracts as if they were not married. (*Thomas*, 106 Ill. at 42.) In *Snell v. Snell* (1888), 123 Ill. 403, 409, the court explained how the laws cited above served to place married women "upon a common footing with married men in respect to all property rights, including the means to acquire, protect and dispose of the same."

Until 1953, however, there was no clear or conclusive determination of whether a married woman could sue her husband for torts inflicted by him upon her. Then, in *Brandt v. Keller* (1952), 413 Ill. 503, our supreme court held that under the Married Women Act of 1874, a married woman could maintain an action for damages against her husband for personal injuries caused by his wilful and wanton misconduct. (*Brandt*, 413 Ill. 503.) In *Brandt*, a wife sued her estranged husband for personal injuries she received as a result of his negligent handling of the automobile in which they were driving. The court examined the development of legal rights since common law and determined that the legislature in 1874 intended to expand the rights of a married woman to sue her husband in tort. (*Brandt*, 413 Ill. at 513.) In reaching its decision, the court dismissed policy arguments that conjugal peace would be disrupted by a tort suit arguing that, "when one spouse assails another or brings suit, there is not much domestic tranquility left to disrupt." (*Brandt*, 413 Ill. at 511.) The court also dismissed arguments that the "potentiality of collusion, or of the perversion of the administration of justice" was any greater in a suit between spouses than between any other parties. (*Brandt*, 413 Ill. at 511.) Most importantly, the court noted the following:

> "Nor does the fact that an insurance company may be the real defendant in interest in such cases constitute a ground for barring the action. In fact, this type of liability constitutes an additional risk which may be insured against, and would ultimately redound to the benefit of the insurer, rather than against his interest." *Brandt*, 413 Ill. at 511.

The State legislature did not share the same views as those expressed by the *Brandt* court. In 1953, State law was amended to provide expressly that "neither husband nor wife may sue the other for a tort to the person committed during coverture." Ill. Rev. Stat. 1953, ch. 68, par. 11.

However, the courts and the legislature gradually created exceptions to this statute which eventually led to the complete abrogation of interspousal tort immunity envisioned by the *Brandt* court. For example, in 1981 the Illinois Domestic Violence Act amended this section to create an intentional tort exception to the doctrine of interspousal tort immunity. (Ill. Rev. Stat. 1981, ch. 40, par. 1001.) The

Seventh Circuit Court of Appeals subsequently held the earlier statute to be in violation of the equal protection clause of the fourteenth amendment because it was not rationally related to the purported goal of maintaining marital harmony. (*Moran v. Beyer* (7th Cir. 1984), 734 F.2d 1245.) The court in *Moran* explained that it would truly strain the imagination "to find some objective basis for believing that depriving a physically battered spouse of a civil remedy for her injuries will advance some sense of 'harmony' with the person who inflicted the injury." *Moran v. Beyer*, 734 F.2d at 1247.

In addition, in *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, we held that interspousal immunity cannot be used as a bar to an action by a joint tort-feasor for contribution. Thus, where a third party is sued by one spouse and that third party subsequently brings an action for contribution against the other spouse, that spouse cannot bar the action by claiming interspousal immunity. Apparently recognizing the import of this decision to the insurance industry, the legislature declared family exclusion clauses in vehicle insurance policies to be inapplicable when a third party acquires a right of contribution against a member of the insured person's family. (Ill. Rev. Stat., 1984 Supp., ch. 73, par. 755.01.) We find it significant that no similar statute was passed which would invalidate the use of a family exclusion clause in cases of intentional torts. See *Palmer*, 123 Ill. App. 3d 674.

Finally, effective January 1, 1988, the Married Women Act unambiguously set forth one spouse's right to sue the other for any tort committed during the marriage. Ill. Rev. Stat. 1987, ch. 40, par. 1001.

■ In light of the history presented above, we conclude that the policy underlying the Married Women Act is one which seeks to increase the legal rights, entitlements, and powers of married women (and men) rather than one which seeks to assure the compensation of injured parties.

Defendants point to comments made by legislators in the course of enacting this amendment in order to illustrate a connection between insurance laws and the Married Women Act. However, we determine that the impact of these comments is greatly diminished in light of the plain language of the statute and in light of the language of the above-mentioned precursory statutes and court rulings interpreting those statutes.

Indeed, if the language of a statute is certain and unambiguous, we must enforce it as enacted. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 207.) Our purpose in examining the historical backdrop of the ab-

rogation of interspousal tort immunity is simply to show that, by enforcing the plain language of the Married Women Act, we are not acting contrary to public policy as illuminated by a long line of laws and cases. To repeat, we determine that this policy is one which speaks to legal empowerment rather than guaranteed insurance coverage. Thus, to the extent that the instant family exclusion clause does not prevent a lawsuit brought by one spouse against the other, it does not contravene the public policy espoused by the unambiguously worded Rights of Married Women Act. This distinction between laws relating to the rights of women and those relating to insurance has not been overlooked by the courts.

■ For example, in *Brandt*, the court commented that the abrogation of interspousal immunity would simply give rise to a risk which *may* be insured against. (*Brandt*, 413 Ill. at 511.) The *Brandt* court did not indicate that such a risk *must* be insured against. (*Brandt*, 413 Ill. at 511.) In addition, courts did not invalidate a family exclusion clause when interspousal immunity for *intentional* torts was abrogated. For example, in *Palmer*, a wife was permitted to pursue an intentional tort action against her husband, but the insurance company was not ordered to provide coverage because of a family exclusion clause in its policy. (*State Farm Mutual Automobile Insurance Co. v. Palmer* (1984), 123 Ill. App. 3d 674.) That court further noted that its holding did not preclude the wife from seeking recovery under other sections of the policy which might apply. (*Palmer*, 123 Ill. App. 3d at 679.) Essentially, the abrogation of interspousal immunity for intentional torts did not automatically invalidate a family exclusion clause when the clause was used to bar coverage in the face of an intentional tort action. In fact, the court specially stated that "[t]he [family exclusion clause] does not violate the public policy of this State." (*Palmer*, 123 Ill. App. 3d at 679.) The same result should occur here. It should not matter that the abrogated immunity applies to nonintentional torts rather than intentional ones. Thus, it appears that laws affecting interspousal immunity and those affecting insurance are not inextricably interrelated.

We believe that our holding is well supported by general principles of statutory construction. First, the language of the statute itself is the best indication of the intent of the drafters. (*Allstate Insurance Co. v. Eggermont* (1989), 180 Ill. App. 3d 55, 65.) Here, the statute is a simple codification of the abrogation of interspousal tort immunity:

> "A husband or wife may sue the other for a tort committed during the marriage." (Ill. Rev. Stat. 1987, ch. 40, par. 1001.)

There is nothing in this language to indicate that the drafters intended to affect insurance contracts. Moreover, "where the legislature uses certain words in one instance, and different words in another, different results were intended." (*Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102, 1105-06.) Thus, we cannot ignore the fact that the one time the legislature intended to invalidate the application of a family exclusion clause, it specifically did so by statute. See Ill. Rev. Stat. 1985, ch. 73, par. 755.01(a) (where the Code prohibits the application of family exclusion clauses to third-party suits for contribution against members of the injured person's family).

Finally, we reject defendants' argument that the family exclusion clause violates the provisions of the financial responsibility act in force at the time of the accident (Ill. Rev. Stat. 1987, ch. 95½, par. 7—100 *et seq.*) for the reasons given in *State Farm Mutual Automobile Insurance Co. v. Suarez* (1982), 104 Ill. App. 3d 556. In *Suarez*, the court explained that while the legislature was concerned with the encouragement and promotion of the availability of several types of financial resources to compensate the injured, liability insurance was by no means the exclusive means to achieve that end. *Suarez*, 104 Ill. App. 3d at 561.

In addition, we reject defendants' contention that the Illinois mandatory insurance law (Ill. Rev. Stat. 1989, ch. 95½, par. 7—601 *et seq.*) is an expression of public policy that would invalidate the family exclusion clause in the present case. Notwithstanding the fact that this provision is inapplicable to the present case because the date of its passage was subsequent to all of the relevant dates of this case, the uninsured motorist provision in plaintiff's insurance policy would provide coverage sufficient to satisfy the requirements of the mandatory insurance laws. Indeed, plaintiff concedes that uninsured motorist coverage under the policy is available. We note that a family exclusion clause does not bar a claim for uninsured motorist benefits. (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384; *Farmers Insurance Group v. Nudi* (1982), 108 Ill. App. 3d 151.) Therefore, even if the terms of the mandatory insurance laws applied here, they would not be violated by a family exclusion clause because sufficient insurance is available through the uninsured motorist provision of the insurance policy.

Thus, we reverse the order of the circuit court of Lake County, vacate the summary judgment for defendants, enter summary judgment for plaintiff regarding the validity and effect of the family exclusion clause, and the cause is remanded for proceedings consistent with this opinion. This holding should not be construed as precluding

defendants from seeking recovery under other sections of the policy which may apply. Counterclaims regarding proper offers of uninsured motorist coverage that were not addressed in the trial court may be addressed on remand.

Reversed in part; vacated in part and remanded; and summary judgment entered.

UNVERZAGT and BOWMAN, JJ., concur.