20 F.3d 286
 62 USLW 2624, 17 Employee Benefits Cas. 2643
 Robert CHAPTER, individually and as guardian of Audrey
Chapter, a disabled person, Plaintiff-Appellee,
v.
MONFORT OF COLORADO, INCORPORATED, Sipco, Incorporated, and
Travelers Plan Administrators of Colorado,
Incorporated, Defendants-Appellants.
 No. 93-3464.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 24, 1994.
Decided March 28, 1994.
Rehearing and Suggestion for Rehearing
En Banc Denied April 28, 1994.
 
 Kurt D. Hyzy, Robert J. Biswurm (argued), Rebecca J. Economos, Chicago, IL, for plaintiff-appellee.
 Richard S. Jalovec, Chicago, IL, William H. Bruckner, Sylvia Davidow (argued), Bruckner & Sykes, Houston, TX, for Monfort of Colorado, Inc., Sipco, Inc.
 William G. Beatty, Thomas J. Lyman, III, Johnson & Bell, Richard S. Jalovec, Chicago, IL, William H. Bruckner, Sylvia Davidow, Bruckner & Sykes, Houston, TX, for Travelers Plan Adm'rs of Colorado, Inc.
 Before POSNER, Chief Judge, ROVNER, Circuit Judge, and GILBERT, District Judge.*
 POSNER, Chief Judge.
 
 
 1
 Audrey Chapter swerved her car into oncoming traffic and collided with two cars, killing a passenger in one. She was badly injured herself, sustaining permanently disabling brain damage. Tests after the accident found very high levels of alcohol in her blood, and she was indicted for reckless homicide; but because of the damage to her brain, it is unlikely that she will ever be competent to stand trial. Her medical expenses exceeded $250,000, and the question we must decide is whether the medical plan of her husband (who was not involved in the accident) must pay them. The suit arises under ERISA (29 U.S.C. Secs. 1001 et seq.), the federal pension law, but the only issue is the proper interpretation of the plan. Bullwinkel v. New England Mutual Life Ins. Co., 18 F.3d 429, 430-31 (7th Cir.1994).
 
 
 2
 Audrey Chapter was a participant in the plan by virtue of being a dependent of her husband. The plan reimburses participants for "covered expenses," defined as "the usual, customary, and reasonable charges for medically necessary services and supplies incurred by a participant." But there are a number of limitations and exclusions. Among the exclusions are "any charges incurred for services and supplies resulting from participation in criminal activities and/or any illegal activities in which the participant is determined to be the aggressor." Mr. Chapter concedes that because his wife's medical expenses resulted from her driving under the influence of alcohol in violation of the criminal laws of Illinois, she would be barred from recovering any of those expenses as a participant in the plan. But, he points out, the Illinois Family Expense Act placed him under a legal obligation to pay for his wife's medical expenses. 750 ILCS 65/15; St. Mary of Nazareth Hospital v. Kuczaj, 174 Ill.App.3d 268, 123 Ill.Dec. 745, 528 N.E.2d 290, 294 (1988). Those expenses were, we may assume, "usual, customary, and reasonable charges for medically necessary services and supplies"; were "incurred" by him, a plan participant; and were, therefore, "usual, customary, and reasonable charges for medically necessary services and supplies incurred by a participant." So, since he had not participated in his wife's criminal activities and therefore was not barred by the exclusion, he was entitled to have her medical expenses reimbursed. The district court, agreeing, granted Mr. Chapter summary judgment. 793 F.Supp. 816 (N.D.Ill.1992).
 
 
 3
 We can put to one side the Family Expense Act. As Mr. Chapter's able counsel acknowledged at argument, his case would be exactly the same if his client had "incurred" his wife's expenses by virtue of a contract with the doctors and hospitals that treated her. It would be the same if a teenage child of the Chapters had been involved in an accident and the father had promised to pay for the child's treatment. Since a plan participant can always bind himself contractually to pay for medical expenses of an injured spouse or child, the plaintiff's argument amounts to saying that the plan's exclusion from coverage of medical expenses incurred in criminal activities does not apply to the criminal activities of dependents. The forward motion of the argument does not stop there, because an essential step in it is the decoupling of the incurring of the injury from the incurring of the expenses for treating it. If Mr. Chapter made an enforceable promise to pay the medical expenses of his neighbor he would be incurring a medical expense and as a plan participant would be entitled to reimbursement, provided the expense was usual, customary, and reasonable. That at least is the logic of the argument though Mr. Chapter's lawyer sensibly declined to embrace it.
 
 
 4
 The reach of the argument could be limited by interpolating "involuntarily" before "incurred by a participant." This would exclude the case in which the participant voluntarily commits himself to pick up someone else's bill for hospital or other medical treatment. By virtue of the Family Expense Act, Mr. Chapter was compelled to pick up his wife's bill. The plaintiff does not make the point, however, maybe because it would undermine his insistence on our reading the plan literally.
 
 
 5
 Even literalists abandon literalism when necessary to avoid absurdity. Unless the plan is limited to medical expenses incurred for services rendered to plan participants, rather than to persons with whom plan participants have a contractual or other legal link, it would cover anyone whom a participant wanted it to cover. We go further: the expenses incurred must be for an injury or illness to oneself, not to another person, even if the other is another plan participant. Mrs. Chapter, not her husband, was the plan participant who incurred the medical expenses for the injuries she sustained in the accident, and she, and therefore her husband as well, is barred from reimbursement for those expenses by her participation in criminal activities.
 
 
 6
 We do not suggest that this interpretation is semantically inevitable. But if you reject it you not only open the door to the neighbor's case, by allowing a plan participant to recover for expenses incurred in the provision of medical services to someone other than himself; you also create senseless distinctions among the various limitations and exclusions (of which there are 34) in the plan. None of the other limitations or exclusions provides any purchase for the type of argument the plaintiff makes in this case. Take number 32: "Expenses directly related to heart, lung and liver transplants." If instead of incurring brain damage in an automobile accident Mrs. Chapter had had a heart transplant because of a cardiac defect, Mr. Chapter, although legally obligated by the Family Expense Act (we may assume) to pay for the expenses of that operation, would have no conceivable claim for the reimbursement of those expenses, because the words "participation in" are missing. It is only the inclusion of those words in the exclusion for criminal activities that gives his argument its purchase, since he did not participate in them. But those words are there not to give the spouse of a drunk driver greater rights than the spouse of a victim of heart disease, but merely to describe the nature of the excluded activity: participation in criminal activities. If the critical words were missing--if the exclusion were of "services and supplies resulting from criminal activities"--then it would be arguable that the victim of a crime could no more be reimbursed than a criminal. That would give the exclusion a different range. The words "participation in" were inserted for a different purpose from the one that the plaintiff imputes to them.
 
 
 7
 The consequence of our interpretation seems harsh because Mrs. Chapter suffered so grievously for her crime and because her husband, who will by virtue of our decision become liable for her heavy medical expenses, was not complicit in that crime. But she is a criminal (as her husband concedes for purposes of our consideration of this case, even though she has not been prosecuted), and she killed someone to boot (and thus is guilty of two crimes--drunken driving and reckless homicide), and she would benefit indirectly if her husband were allowed to circumvent an exclusion designed for just such a case as this. While the tendency in the modern cases dealing with the analogous question whether an innocent co-owner can recover under a fire insurance policy when the fire was caused by an arsonist co-owner is to allow recovery, e.g., Hildebrand v. Holyoke Mutual Fire Ins. Co., 386 A.2d 329 (Me.1978), even though (assuming joint ownership) the benefit of the recovery enures in part to the arsonist, it is apparent that the medical plan in this case attempted to exclude such possibilities.
 
 
 8
 The judgment of the district court is reversed with instructions to enter judgment for the defendants and dismiss the suit.
 
 
 9
 REVERSED.
 
 
 
 *
 Hon. J. Phil Gilbert of the Southern District of Illinois