In re Voravit CHINOSORN, Debtor.

Bankruptcy No. 99 B 03025.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 19, 2000.

Bernard M. Kaplan, Northbrook, IL, for Debtor.

Sheldon L. Solow, Harold D. Israel, Chicago, IL, for Respondent.

## MEMORANDUM OF OPINION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 7 case has come before the court on the motion of the debtor, Voravit Chinosorn, to avoid a judicial lien on his home. Chinosorn's motion is based on § 522(f)(1) of the Bankruptcy Code (Title 11, U.S.C.), which allows avoidance of judicial liens that impair an exemption to which the debtor would be entitled under § 522(b) of the Code. Chinosorn asserts that a lien on his home impairs an exemption to which he would be entitled under the Illinois statute establishing tenancy by the entirety. The holder of the asserted lien, Fleet Business Credit Corporation, opposes Chinosorn's motion on the ground that the Illinois statute does not exempt all of Chinosorn's interests in the home. However, Fleet did not object to Chinosorn's claimed exemption within the time required by the Federal Rules of Bankruptcy Procedure, and so Chinosorn argues both (1) that Fleet's argument regarding the validity of his exemption claim cannot be considered and (2) that, in any event, his claim of exemption is valid, so that Fleet's lien must be avoided.

As explained below, Chinosorn's motion must be denied for one of two reasons: First, there is some doubt as to whether Fleet actually holds a judgment lien against Chinosorn's interest as a tenant by the entirety. If, under Illinois law, no lien against entireties property comes into effect as a result of a judgment against only one of the tenants, Fleet's claim in the present case would be unsecured and Chinosorn's motion for lien avoidance would have to be denied as unnecessary.

On the other hand, if Illinois law does impose a lien on interests of a tenant by

the entirety based on a judgment against that tenant individually, then, to that extent, Chinosorn would not be entitled to an exemption under § 522(b), as required for lien avoidance under § 522(f). Fleet is not precluded from arguing Chinosorn's lack of substantive entitlement to an exemption, and hence, the pending motion would have to be denied on the merits.

Since the motion must be denied in either event, the question of whether the lien arises may be left for resolution by the Illinois courts.

## Jurisdiction

Pursuant to 28 U.S.C. § 1334(a), federal district courts have exclusive jurisdiction over bankruptcy cases. However, pursuant to 28 U.S.C. § 157(a), the district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such reference of the pending case. When presiding over such a referred case, a bankruptcy judge has jurisdiction, pursuant to 28 U.S.C. § 157(b)(1), to enter appropriate orders and judgments as to core proceedings within the case. The determination of whether a lien is valid and enforceable is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and so this court has jurisdiction to enter an order deciding the present motion for lien avoidance.

## Findings of Fact

None of the facts relevant to the pending motion are in dispute; the following findings are drawn from the parties' filings.

In early 1995, Voravit Chinosorn was involved in a dispute regarding a sublease guarantee that he had executed. Fleet Business Credit Corporation ("Fleet")— then known as Sanwa Business Credit Corporation—eventually succeeded to the rights of the sublessor. At the time the dispute arose, Chinosorn and his wife lived together in a home located in Cook County, Illinois, and held title to their home as joint tenants. On February 24, 1995, Chinosorn and his wife executed a deed transferring title to themselves as tenants by the entirety; the deed was recorded on March 3, 1995.

Five days later, on March 8, a complaint was filed against Chinosorn in the Circuit Court of Cook County, based on the alleged breach of his sublease guarantee. After a little more than three years, on May 11, 1998, this complaint was adjudicated, with the entry of a judgment in Fleet's favor, against Chinosorn (but not his wife), in the amount of $216,215.57. Fleet recorded a memorandum of this judgment with the Cook County Recorder of Deeds on July 8, 1998.

About seven months after the judgment was recorded, on February 1, 1999, Chinosorn filed the pending Chapter 7 bankruptcy case. In the schedules accompanying his bankruptcy petition, Chinosorn listed his home as exempt under 765 ILCS 1005/1c, the Illinois statute establishing and defining tenancies by the entirety. The schedules state that the home has a value of $200,000, and that it is unencumbered by any liens other than the Fleet judgment. The claim arising from Fleet's judgment is scheduled in two different ways. First, Chinosorn listed the claim as secured by a "disputed and improper judicial lien" that "may exist" against his home, but which "should properly be vacated." Second, he scheduled Fleet's claim as unsecured.[1]

---

1. Among the other unsecured debts scheduled by Chinosorn are several—four liquidated debts totalling over $31,000 and two unliquidated debts—arising out of medical services provided to Chinosorn's wife for injuries that she suffered in an automobile accident. These were apparently joint obligations of Chinosorn and his wife. Apart from any con-

tractual obligation that Chinosorn may have had to pay his wife's medical bills, Illinois law imposes a duty on each spouse to pay for the medical expenses of the other. 750 ILCS 65/15 (the "Family Expense Statute"); see Chapter v. Monfort of Colorado, Inc., 20 F.3d 286 (7th Cir.1994) (acknowledging that a hus-

A meeting of creditors in Chinosorn's bankruptcy case was held, as required by § 341 of the Bankruptcy Code, on March 9, 1999. The notice of this meeting informed creditors, consistent with the provisions of Fed. R. Bankr.P. 4003(b), that they would have until 30 days after the conclusion of the meeting to object to exemptions claimed by Chinosorn. The meeting concluded on the date it was held, and so objections to Chinosorn's exemptions would have been required to be filed by April 8, 1999. No objections were filed by that date.

On May 19, 1999, Chinosorn filed the pending motion to avoid Fleet's judgment lien, pursuant to § 522(f)(1)(A) of the Bankruptcy Code. Fleet opposed the motion, and the parties have briefed the issues.

### Conclusions of Law

The question raised by the pending motion—whether there should be avoidance, under the Bankruptcy Code, of a judicial lien on Chinosorn's interest as a tenant by the entirety in his home—is a surprisingly complex one. The issues that impinge on the question require an understanding of the nature of tenancy by the entirety, and particularly the use made of this concept in current Illinois law. With that understanding, it is possible to address (1) whether there is a lien on Chinosorn's tenancy interest, and (2) if so, the extent to which Chinosorn's interest is exempt under the Bankruptcy Code so as to support avoidance of the lien.

**1. *Tenancy by the entirety in Illinois.***

*Background.* Tenancy by the entirety (or by the "entireties"—the singular and plural seem to be used interchangeably) is a vestigial remnant of the common law. Altered by statute in most American juris-

dictions in the nineteenth century, and abolished in England in the early twentieth, tenancy by the entirety was the only manner in which a husband and wife could own real property at common law.[2]

Tenancy by the entirety was part of the general common law legal status of a married woman, known as "coverture," which was based on the metaphorical premise that a married couple was "one person" and that the husband was that person. *Bassett v. Bassett*, 20 Ill.App. 543, 544–45, 1886 WL 5526, *1 (4th Dist.1886). *See* *Osborn v. Horine*, 19 Ill. 124, 125 (1857):

> The very term coverture implies that [a wife] is, during its continuance, under the protection of her husband, and the common law will not allow her to do anything which may prejudice her rights or interests, without his advice, consent and approval. In this respect, she is incapable of acting alone. In defining the meaning of the word coverture, Mr. Webster has laid down this rule of law, with such succinctness and perspicuity, that I gladly adopt his language. He says: "The coverture of a woman disables her from making contracts to the prejudice of herself or husband, without his allowance or confirmation."

As it concerned a wife's personal property, coverture implied an absolute gift to her husband. All personalty that a wife owned at the time of the marriage or that she acquired during it became the exclusive property of her husband. Phipps, *supra* n. 1, at 24. As to real property, coverture brought about tenancy by the entirety— real property owned by either the husband or the wife at the time of their marriage, or acquired by either during the marriage, was deemed owned by the marital entity, but subject to exclusive control by the husband. The only limit on the husband's

---

band is responsible for paying his wife's medical bills under the statute).

**2.** A thorough description of the operation and history of the estate of tenancy by the entirety in the United States is set out in Oval A.

Phipps, *Tenancy by Entireties,* 25 Temp. L.Q. 24 (1951). The estate was abolished in England by the Law of Property Act, 15 & 16 Geo. 5, ch. 2, § 37 (1925).

control was that he could not unilaterally alienate the wife's right to the property if she survived him. Thus, to alienate the entire ownership interest, both husband and wife would have to consent, and only creditors with claims against the husband and wife jointly could enforce their claims by sale of complete title to the property. However, consistent with his control, the husband could obtain credit through his rights in the property—to use it during his life and to own it outright if he survived his wife—and his individual creditors could attach these rights if he defaulted on his obligations. In contrast, the wife had no right to the property other than her contingent right of survivorship, and her individual creditors could take no interest in the property during her husband's life. *Id.* at 25–26.

Unsurprisingly, these aspects of the common law were seen as inequitable in their treatment of women, and, beginning in the middle 1800's, nearly all American jurisdictions enacted "married women's property acts," allowing wives to own property separately from their husbands. Phipps, *supra,* at 27. Illinois enacted its Married Women's Act in 1861. 1861 Ill. Laws 143; *Douds v. Fresen,* 392 Ill. 477, 479, 64 N.E.2d 729, 730 (1946).

The courts of the various states differed in the way that they applied the married women's property acts to tenancies by the entirety. As outlined by Phipps, *supra* at 27–32, there were at least four different approaches:

(1) The courts of a few states held that, under the applicable married women's property act, tenancy by the entirety continued to exist, with all of its common law features. In this way, although a married woman could hold her own property, she could also hold property as a tenant by the entirety with her husband, and as to such property, the husband would have full power of control. *See, e.g., Arrand v. Graham,* 297 Mich. 559, 563, 298 N.W. 281, 283 (1941); *Voight v. Voight,* 252 Mass. 582, 147 N.E. 887 (1925). At least in Massa-

chusetts, this meant that an "individual creditor of the husband could levy and sell on execution his interest in the tenancy," subject to the wife's contingent survivorship interest, but that the wife's individual creditors could obtain no interest in the entireties property. *Coraccio v. Lowell Five Cents Sav. Bank,* 415 Mass. 145, 150, 612 N.E.2d 650, 654 (1993) (discussing the state of the law prior to a 1980 statute).

(2) In several other states, tenancy by the entirety was also held to continue to exist after the married women's property acts, but both spouses were given the rights of the husband under the common law. Thus, either husband or wife could exercise control of the property (short of unilaterally alienating the other's survivorship interest), and individual creditors of either spouse could enforce their claims against that spouse's interest in the tenancy, subject to the other's right of survivorship. *See, e.g., Wilde v. Mounts,* 95 Or. App. 522, 524–25, 769 P.2d 802, 803 (1989); *Finnegan v. Humes,* 252 A.D. 385, 299 N.Y.S. 501, 503, *aff'd* 277 N.Y. 682, 14 N.E.2d 389 (1938).

(3) In a larger number of states, the courts found that while tenancy by the entirety survived the married women's act, it afforded both spouses only the limited interests of a wife under the common law. Thus, neither party could unilaterally control the property, and the creditors of neither could enforce their claims against any individual interest in the tenancy; only joint creditors had enforceable claims to the property while the property was held by the entirety. *See, e.g., Citizens Sav. Bank v. Astrin,* 44 Del. 451, 454–55, 61 A.2d 419, 421 (Del.Super.Ct.1948); *Klebach v. Mellon Bank,* 388 Pa.Super. 203, 208, 565 A.2d 448, 450 (1989).

(4) Finally, in many other states, the courts held that the estate of tenancy by the entirety had been effectively abolished by the married women' acts, or that the estate had never been a part of the state's common law. *See, e.g., Walthall v. Goree,* 36 Ala. 728, 735, 1860 WL 619, *5 (1860);

*Schimke v. Karlstad,* 87 S.D. 349, 353–57, 208 N.W.2d 710, 712–14 (1973) (collecting authorities).

The states recognizing tenancy by the entirety also differed in the extent to which it was allowed. Some allowed the estate to encompass any form of property, real or personal, *e.g., Cross v. Pharr,* 215 Ark. 463, 466, 221 S.W.2d 24, 25–26 (Ark. 1949); others allowed the estate to include only real property, *e.g., Franklin National Bank v. Freile,* 116 N.J. Eq. 278, 282–83, 173 A. 93, 96 (1934); and by statute, Massachusetts provided that only entireties property used as a marital domicile would be protected against "seizure or execution" to satisfy the debts of an individual spouse. Mass. Gen. L. ch. 209, § 1; *see Coraccio v. Lowell Five Cents Sav. Bank,* 415 Mass. 145, 150, 612 N.E.2d 650, 654 (1993) (applying the statute).

*The Illinois enactment of tenancy by the entirety.* Initially, Illinois was one of the states in which the courts held that the married women's act abolished tenancy by the entirety. However, in 1990, the Illinois legislature revivified the old estate through P.A. 86–966. This act allows an estate in tenancy by the entirety, but only as to interests in property "maintained or intended for maintenance as a homestead by both husband and wife together during coverture." 765 ILCS 1005/1c.[3] The act specifies that, during the time that homestead property is held in tenancy by the entirety, "[n]o deed, contract for deed, mortgage, or lease of [the] property ... shall be effective unless signed by both tenants." *Id.* The act also specifies the circumstances under which the estate would end as to a particular homestead, each with different consequences:

(1) "[U]pon the death of either such tenant the survivor shall retain the entire estate ...."

(2) "[U]pon a judgment of dissolution of marriage or of a declaration of invalidity of marriage, the estate shall, by operation of law, become a tenancy in common ...."

(3) "[T]he estate shall, by operation of law, become a joint tenancy upon the creation and maintenance by both spouses together of other property as a homestead." *Id.* Finally, the Illinois act contains its own prescription of the effect of tenancy by the entirety on judgment creditors: "Any real property held in tenancy by the entirety shall not be liable to be sold upon judgment entered ... against only one of the tenants.... However, any income from such property shall be subject to garnishment ... whether judgment has been entered against one or both of the tenants." 735 ILCS 5/12–112.

## 2. The existence of a judgment lien.

Chinosorn's motion for lien avoidance raises, in the first instance, a question about the lien he is seeking to avoid. As noted above, Chinosorn's schedules are equivocal on the question of whether there is, or is not, a judgment lien on his home. Consistent with this equivocation, Chinosorn's pending motion seeks avoidance of a "disputed and improper judicial lien," and the parties initially briefed the question of lien avoidance without addressing the question of whether Fleet's judgment against Chinosorn, individually, actually gave rise to a lien under Illinois law. However, the issue is crucial for two reasons, one technical and the other practical.

Technically, Chinosorn must establish that a lien has fixed on his property in order to be entitled to the lien avoidance he is seeking. Section 522(f)(1)(A) of the Bankruptcy Code, which provides the basis for Chinosorn's motion, states in pertinent part:

[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would

---

**3.** By this time, the Illinois courts had construed "coverture" simply to mean "marriage," without implying any of the common law disabilities. *See Soedler v. Soedler,* 89 Ill.App.3d 74, 76, 44 Ill.Dec. 425, 411 N.E.2d 547, 548 (3d Dist.1980).

have been entitled under subsection (b) of this section [i.e., § 522(b) of the Code] if such lien is—a judicial lien.

The section thus establishes three elements for lien avoidance: (1) a lien must have fixed on an interest of the debtor in property, (2) the lien must impair an exemption to which the debtor would have been entitled under § 522(b), and (3) the lien must be a judicial lien—with the debtor bearing the burden of each element. *See Estate of Catli v. Catli (In re Catli),* 999 F.2d 1405, 1406 (9th Cir.1993). Accordingly, if Chinosorn cannot establish the existence of a lien on his property interest, he will have failed to satisfy the first and third elements for avoidance under § 522(f)(1), and his motion would have to be denied.

■ Second, on a purely practical level, if there were no lien on Chinosorn's property interest, the pending motion would have to be denied as unnecessary. *See In re Mendiola,* 99 B.R. 864, 865 (Bankr.N.D.Ill.1989) (denying a motion for reopening a case to add omitted creditors to the schedules because no purpose would be served thereby). If Fleet has no lien against Chinosorn's property interest under Illinois law as a result of its judgment, then its claim would be unsecured, and subject to discharge. A discharged claim cannot generate liens on property interests that a debtor acquires after the filing of a bankruptcy petition. *See In re Paeplow,* 972 F.2d 730, 735 (7th Cir.1992); *Marshall v. Suntrust Bank (In re Marshall),* 204 B.R. 838, 840 (Bankr.S.D.Ga.1997) ("[C]reditors may not create post-petition liens based upon discharged debts, nor may they institute post-discharge in rem collection actions against after-acquired property if they hold no surviving lien after the discharge.") So, simply put, if Fleet does not now hold a lien against Chinosorn's property interest, Chinosorn

has no reason for concern that Fleet may assert a lien at some later time, even if Chinosorn's present interest as a tenant by the entirety is later converted into another interest that is subject to lien.[4]

Unfortunately, no Illinois court has decided the question of whether any lien on the interests of a tenant by the entirety results from a judgment against that tenant individually, and the question is debatable.

On one hand, in the somewhat analogous situation of homestead property, Illinois law has established that judgment liens never come into existence. The leading decision for this rule of law is *Lehman v. Cottrell,* 298 Ill.App. 434, 19 N.E.2d 111, (2d Dist.1939). There, the court dealt with the Illinois statute that establishes the estate of homestead and declares that this estate is "exempt from judgment" and can be conveyed by the owner without "subject[ing] the premises to any lien or incumbrance to which it would not have been subject in the hands of such owner." 298 Ill.App. at 441, 19 N.E.2d at 115. On the basis of this statutory language, the court held that a judgment creates no lien against the homestead estate, so that the property can be sold without a judgment creditor being able to levy on the property in the hands of the purchaser. *Id.* The court also described the legal result of an abandonment of the property as the judgment debtor's homestead:

> The act of abandonment operates as a voluntary termination of the homestead exemption.... Under such circumstances, the property becomes liable to the lien of a judgment the same as any other property of a debtor which is not subject to the homestead exemption act, and it would appear that all prior judgments will attach at the moment of abandonment; that they have no prece-

---

4. Chinosorn has urged that his motion be granted even if no lien actually existed, so as to clear title to his property. However, if Chinosorn seeks a judicial determination that there is no lien (rather than a determination

that an existing lien should be avoided), he would have to make that request explicitly, through an adversary proceeding seeking a declaratory judgment. *See* Fed. R. Bankr.P. 7001(2).

dence over one another, and that the judgment creditor who first proceeds to the enforcement of his judgment will gain priority over the other judgment creditors.

*Id.*

In distinguishing the homestead exemption law of Illinois from that of other states, the court stated a general rule: if property cannot be sold to satisfy a judgment, there can be no judgment lien against the property. 298 Ill.App. at 441, 19 N.E.2d at 115; *accord, Rochford v. Laser,* 91 Ill.App.3d 769, 774, 46 Ill.Dec. 943, 414 N.E.2d 1096, 1101 (1st Dist.1980). As noted above, property held by a married couple as tenants by the entirety cannot be sold, under Illinois law, to satisfy a judgment against only one of the spouses. 735 ILCS 5/12–112. Based on this authority, one bankruptcy court has concluded, in dicta, that there is no lien under Illinois law against entirety property as the result of a judgment against only one of the tenants. *In re Allard,* 196 B.R. 402, 410 (Bankr.N.D.Ill.1996), *aff'd on other grounds sub nom. Great Southern Co. v. Allard,* 202 B.R. 938 (N.D.Ill.1996); *see also Harris Bank v. Weber,* 298 Ill.App.3d 1072, 1077, 233 Ill.Dec. 194, 700 N.E.2d 722, 726 (2d Dist.1998) (stating in dicta, without explanation, that property held by the entirety "cannot be attached by a creditor of one spouse.").

However, the *Lehman/Rochford* line of cases may well be inapplicable to the situation of judgment liens on entireties property. All questions about judgment liens in Illinois are questions of statutory construction. *Lehman,* 298 Ill.App. at 440, 19 N.E.2d at 114 ("At common law, land was subject neither to execution nor to the lien of a judgment. Both these rules are purely statutory."). And under the language of the relevant Illinois statutes, a judgment against an individual owning property as a tenant by the entirety, when properly recorded, appears to give rise to a lien, not against the entirety property itself, but rather against the individual tenant's contingent future interests.

The basic provision establishing judgment liens in Illinois is 735 ILCS 5/12–101, which provides that "a judgment ... is a lien on the real estate of the person against whom it is entered ... from the time ... a memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located." [5] For purposes of such judgment liens, "real estate" is broadly defined by 735 ILCS 5/12–105 to include "lands, tenements, hereditaments, and *all legal and equitable rights therein,* including estates for the life of the debtor or of another person" (emphasis added), so that all of the interests of a tenant by the entirety are within the "real estate" subject to judgment liens. The rights of an individual tenant by the entirety plainly include more than an undivided fee simple interest in the property with the other spouse. These rights include (1) a present interest in any rents or other income from the property (which the Illinois statute expressly makes subject to garnishment to satisfy the judgment of a creditor of only one tenant), and (2) several different types of contingent future interests, including (a) an interest as a tenant in common in the event of divorce, (b) an interest as a joint tenant in the event that another homestead is established, and (c) a survivorship interest in the entire property in the event of the other tenant's death. Although the property itself cannot be sold in fee simple to satisfy a judgment against only one of the tenants, nothing in Illinois law states that the contingent future interests of an individual tenant cannot be sold for that purpose, or that no lien attaches to these interests.

To the contrary, where the Illinois legislature has determined that a judgment lien should not be created as to a debtor's

---

**5.** The statute makes different provision for property registered under the Torrens system, but there is no indication that Chinosorn's property is so registered.

interests in particular property, it has provided that the property is "exempt from judgment," 735 ILCS 5/12–901 (estate of homestead); 735 ILCS 5/12–1001 (specified personal property), or that it is not "subject to any lien," 820 ILCS 305/21 (workers' compensation award). In contrast to these provisions, which specifically negate the existence of all judgment liens applying to the debtor's interests in exempt property, the language of 735 ILCS 5/12–112 merely states that "real property . . . held in tenancy by the entirety shall not be liable to be sold upon judgment . . . against only one of the tenants," without negating any liens otherwise created by 735 ILCS 5/12–101.

Accordingly, the courts of Illinois may find that a lien against the contingent future interests of an individual tenant by the entirety arises from the recording of a judgment against that tenant only. This would be consistent with the interpretation of similar entirety provisions in other states. *See, e.g., Peebles v. Minnis,* 402 Mass. 282, 283, 521 N.E.2d 1372, 1373 (1988) (entirety property that, under statute, was not "liable to be taken on execution" was nevertheless subject to attachment, so as to "protect[ ] the creditor's interest in the property as against the debtor's other creditors"); *Cull v. Vadnais,* 122 R.I. 249, 257–58, 406 A.2d 1241, 1245–46 (1979) (same, based on application of the common law).

Moreover, recognizing such a lien may be the most reasonable method of balancing the interests involved in tenancies by the entirety. On one hand, since the lien would only apply to contingent future interests of an individual tenant, the interests of the other tenant would be protected. Thus, for example, a wife's interest in the family home held in tenancy by the entirety would not be alienable as a result of her husband's debts. On the other hand, where one tenant did incur individual debt, judgments recorded against that tenant's interest would provide for an orderly priority of claims, eliminating the potential for a scramble of creditors trying to be first to enforce their judgments at the end of the tenancy (the situation described by *Lehman* as occurring at the abandonment of a homestead).

▮ Thus, there may well be a lien on Chinosorn's contingent future interests as a tenant by the entirety, created by the recording of Fleet's judgment, which would make the pending motion meaningful. However, for the reasons set forth in the following section of this opinion, to the extent that Illinois law allows enforcement of judgments against the contingent interests of an individual tenant, Chinosorn's contingent interests as a tenant by the entirety would not be exempt for purposes of § 522(b) of the Code, and so the motion for lien avoidance would still have to be denied.

### 3. *Lien avoidance under § 522(f)(1).*

As noted above, Illinois law may recognize a lien on Chinosorn's contingent future interests in his entireties property, arising from Fleet's judgment against him individually. If so, a lien would have fixed on an interest of Chinosorn in property, and the lien would be a judicial lien as defined by the Bankruptcy Code. Thus, two of the three requirements for lien avoidance under § 522(f)(1)(A) of the Bankruptcy Code would be satisfied. The only issue that would remain in dispute is whether the lien impaired an exemption to which Chinosorn would have been entitled under § 522(b). *See Estate of Catli v. Catli (In re Catli),* 999 F.2d 1405, 1406 (9th Cir.1993). Chinosorn makes two arguments in support of the position that he has the requisite entitlement to an exemption: (1) he asserts that Fleet waived its right to contest his entitlement to an exemption under § 522(b) of the Code, by not timely objecting to the exemption claimed in Chinosorn's bankruptcy schedules, and (2) he argues that he is entitled to an exemption under § 522(b) in any event. Neither argument is persuasive.

■ *The creditor's standing to contest substantive entitlement to an exemption.* There is no question that Chinosorn is entitled to the exemption he listed in his schedules. Section 522(*l*) provides that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt," and the Supreme Court has held that, in order to be effective for purposes of § 522(*l*), an objection must be made within the time limit established by Fed. R. Bankr.P. 4003. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992): *see also In re Kazi*, 985 F.2d 318 (7th Cir.1993) (following *Taylor*). Accordingly, in the absence of a timely objection, a scheduled exemption is effective under § 522(*l*)—even if the debtor had no substantive right to the exemption and a timely objection would have been sustained. *Id.* Chinosorn's scheduled exemption of his interest in the home, not having been subject to a timely objection, would therefore be valid, regardless of its substantive merit.[6]

■ However, in order to serve as the basis for an avoidance of lien under § 522(f)(1)(A), a claimed exemption must not only be valid, it must be one to which the debtor would have been entitled "under subsection (b)." Subsection 522(b)—as discussed below—sets forth the substantive grounds under which an exemption may be claimed. The mere fact that a debtor has obtained an exemption by default under § 522(*l*) does not establish the debtor's substantive entitlement to an exemption under § 522(b). Thus, a creditor's failure to object to a claimed exemption, allowing the exemption to go into effect by default, does not prevent the creditor from arguing—in the context of a motion to avoid lien under § 522(f)(1)(A)—that the debtor lacks a substantive entitlement to the exemption under § 522(b). A majority of the decisions considering the issue have so held. *See Morgan v. FDIC (In re Morgan)*, 149 B.R. 147, 151 (9th Cir. BAP 1993); *In re Franklin*, 210 B.R. 560, 564–66 (Bankr.N.D.Ill.1997); *In re Streeper*, 158 B.R. 783, 786 (Bankr.N.D.Iowa 1993); *In re Mohring*, 142 B.R. 389, 394 (Bankr.E.D.Cal.1992), *aff'd*, 24 F.3d 247 (9th Cir.1994); *In re Montgomery*, 80 B.R. 385, 389 (Bankr.W.D.Tex.1987) ("It is to Section 522(b), not to Section 522(*l*), that the court's attention must be directed in Section 522(f) actions.").

■ In requiring the debtor to establish a substantive right to an exemption under § 522(b) (and allowing a creditor to assert that such a right has not been established), these decisions properly apply the plain language of § 522(f)(1)(A). *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808. 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997) ("[I]nquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'") (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)). However, even if there were any ambiguity in the language of § 522(f)(1)(A), it would

---

6. The failure of creditors and the trustee to object to Chinosorn's exemption claim in this case may thus have had a substantial effect in this case. As noted above (n. 1), there appear to be significant joint claims against Chinosorn and his wife. There was no basis for asserting any exemption as to these claims. *Edmonston v. Murphy (In re Edmonston)*, 107 F.3d 74, 77 (1st Cir.1997) ("[A]n exemption claim is void ab initio to the extent there are joint creditors."). Accordingly, to the extent of the joint claims, Chinosorn would have had no exemption, and his property could be sold by the trustee, with the proceeds placed in the estate to the extent of the joint claims. *See In*

re *Fishman*, 241 B.R. 568, 575 (Bankr.N.D.Ill. 1999). Moreover, upon a sale of the property, it might be that the proceeds of Chinosorn's interest in the property also would be subject to claims of individual creditors, since Illinois law extends entirety status only to homestead property, not its proceeds. By failing to object to the exemptions, the trustee may have foregone this opportunity. *But see Williams v. Peyton (In re Williams)*, 104 F.3d 688, 690 (4th Cir.1997) (a claim of exemption based on citation of a statute involving tenancy by the entirety does not exempt property to the extent of joint claims, even though no timely objection was filed).

have to be resolved in favor of allowing a lienholder to challenge the debtor's substantive right to a claimed exemption. This is because of the well-established principle that ambiguous statutes should be given the interpretation that avoids constitutional difficulties. *See International Assn. of Machinists v. Street,* 367 U.S. 740, 749, 81 S.Ct. 1784, 1790, 6 L.Ed.2d 1141 (1961) ("Federal statutes are to be so construed as to avoid serious doubt of their constitutionality.") If § 522(f)(1)(A) were interpreted to require lien avoidance, based on a substantively groundless exemption, simply because there had been no timely objection to the exemption, serious due process questions would be raised—as this court explained in *In re Franklin,* 210 B.R. 560, 565 (Bankr.N.D.Ill.1997):

> Although creditors are given notice of the deadline to file objections to exemptions claimed by the debtor, they are not informed of what property the debtor actually claims as exempt (this could only be found by searching the bankruptcy files), and secured creditors are given no notice that failure to object to a claim of exemption on liened property may result in loss of the lien. Yet it is a general requirement of constitutional due process that a lienholder be given actual notice of any proceeding in which its lien may be lost. *See Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 2711, 77 L.Ed.2d 180 (1983) ("[A] mortgagee clearly has a legally protected property interest," and so is "entitled to notice reasonably calculated to apprise him" of a proceeding that would have the effect of voiding that interest.). Even if a lienholder has general knowledge that lien avoidance is possible, the lienholder is still entitled to notice of the particular proceeding that may result in loss of the lien. *See id.* at 799, 103 S.Ct. at 2712 ("Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover ... whether [lien avoiding] proceedings are ... likely to be initiated."). It is highly doubtful

whether this notice requirement is satisfied by a procedure in which secured creditors are notified of a lien avoidance proceeding under § 522(f)(1)(A) only after it is too late for them to object to the exemptibility of the liened property.

Other decisions raising due process concerns in connection with the interpretation of § 522(f)(1)(A) include *Morgan v. FDIC (In re Morgan),* 149 B.R. 147, 152 (9th Cir. BAP 1993); *In re Smith,* 119 B.R. 757, 760 (Bankr.E.D.Cal.1990); *In re Frazier,* 104 B.R. 255, 259 (Bankr.N.D.Cal.1989); and *In re Maylin,* 155 B.R. 605, 611 (Bankr. D.Me.1993). These due process concerns are eliminated if § 522(f)(1)(A) is interpreted to allow a lienholder to challenge a debtor's substantive entitlement to an exemption after the lienholder receives notice of the motion for lien avoidance.

There are decisions holding to the contrary—that the requirements of § 522(f)(1)(A) are met by a substantively groundless exemption that is only effective, under § 522(*l*), because of a lack of objection. *See, e.g., Great Southern Co. v. Allard,* 202 B.R. 938, 941 (N.D.Ill.1996); *In re Andres,* 212 B.R. 306, 309–10 (Bankr. N.D.Ill.1997); *In re Youngblood,* 212 B.R. 593, 598 (Bankr.N.D.Ill.1997). These decisions state that their conclusions are mandated by the Supreme Court's opinion in *Taylor.* However, *Taylor* interpreted only § 522(*l*) and Fed. R. Bankr.P. 4003(b)—as requiring timely objection in order to avoid exemptions by default. 503 U.S. at 643, 112 S.Ct. at 1648. *Taylor* did not consider lien avoidance under § 522(f), and the opinion hardly contradicts the possibility that a debtor may have an exemption by default under § 522(*l*), without having a substantive right to the exemption under § 522(b)—that, indeed, is what *Taylor* holds. And, for the reasons set forth above, it is the substantive right to an exemption, under § 522(b), that is required by § 522(f)(1)(A) for lien avoidance.

■ Accordingly, in order to prevail on the pending motion, Chinosorn has the

burden of establishing not merely that he has an exemption (by default) in his interest in his home, but that he has a substantive right to that exemption under § 522(b). Fleet is not foreclosed from arguing that Chinosorn has failed to meet this burden.

*Entitlement to a lien under § 522(b)(2)(B).* The substantive basis for Chinosorn's exemption claim is § 522(b)(2)(B) of the Bankruptcy Code. To understand this provision, some background is required. The general treatment of exemptions under the Bankruptcy Code includes the following features, as outlined in *In re Fishman,* 241 B.R. 568, 571, 573–74 (Bankr.N.D.Ill.1999):

(1) Under §§ 541 and 542, all property interests of the debtor are included in the debtor's estate, and these interests must be turned over to the bankruptcy trustee. The estate includes any interest of a debtor as a tenant by the entirety. *In re Hunter,* 970 F.2d 299, 302–03 (7th Cir. 1992). Thus, the estate would include Chinosorn's contingent future interests in his homestead.

(2) A Chapter 7 trustee has the duty, under § 704(1), to liquidate the property of the estate, and, under § 726, to distribute the proceeds to creditors in a defined order of priority. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 383 (1977), U.S.Code Cong. & Admin. News 5963, 6046; S.Rep. No. 989, 95th Cong., 2d Sess. 96 (1978), U.S.Code Cong. & Admin. News 5787, 5882. ("[S]ection [726] ... dictates the order [of] distribution of property of the estate, which has usually been reduced to money by the trustee under the requirements of section 704(1).") However, property subject to liens comes into the estate subject to those liens, so that the trustee is generally allowed to liquidate that property only if it has value in excess of the claims it secures (or if the secured creditor consents). *See* 11 U.S.C. §§ 362(d) (providing for relief from the automatic stay where there is no equity in collateral); 363(f) (defining the circumstances under which a trustee may sell estate property free and clear of liens);

(3) Under § 522, the debtor may exempt certain estate property. Exempt property is removed from the estate, and so is retained by the debtor rather than being liquidated by the trustee. *See* 11 U.S.C. § 542(a) (exempt property need not be turned over to the trustee); *Sherk v. Texas Bankers Life & Loan Ins. Co. (In re Sherk),* 918 F.2d 1170, 1174 (5th Cir.1990) (exempt property is "no longer property of the estate"). Moreover, even creditors who hold claims excepted from discharge are generally unable to enforce those claims against exempt property, pursuant to § 522(c) of the Code.

Within this framework, § 522(b) operates to determine what property interests can be exempted by the debtor. The subsection defines two alternative sets of exemptible property.

*First,* § 522(b)(1) allows the debtor to exempt property that is listed in the Bankruptcy Code itself—the "federal" exemptions of § 522(d)—but provides that state law may make these exemptions unavailable. Illinois has done so, thus "opting out" of the federal exemptions. *See* 735 ILCS 5/12–1201; *Clark v. Chicago Municipal Employees Credit Union,* 119 F.3d 540, 543 (7th Cir.1997).

*Second,* § 522(b)(2) allows for "state" exemptions, consisting of

(A) "any property that is exempt under Federal law [other than the Bankruptcy Code] ... or State or local law [of the debtor's domicile]," and

(B) certain joint property interests, including "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest as a tenant by the entirety ... is exempt from process under applicable nonbankruptcy law."

Section 522(b)(2)(A) is inapplicable here. There are no non-bankruptcy federal ex-

emptions for interests of a tenant by the entirety, and the exemptions expressly provided by Illinois law—735 ILCS 5/12–901 to 5/912 (homestead) and 5/12–1001 to 5/12–1006 (personal property)—do not include such interests. Rather, the question in this case arises under § 522(b)(2)(B): whether any part of Chinosorn's interest in his home, as a tenant by the entirety, is "exempt from process" under Illinois law.

■ *The extent of "exemption from process."* As noted above, § 522(b)(2)(B) of the Bankruptcy Code allows a bankruptcy exemption for property held in tenancy by the entirety, "to the extent" that state law makes such property "exempt from process." This phrase is not elucidated by the legislative history.[7] However, the apparent intent of the provision is to provide, in bankruptcy, a level of protection from claims of creditors identical to the protection that owners of entireties property would have in collection proceedings outside of bankruptcy, under applicable state law. Thus, the courts have held that, in order to be exempt under § 522(b)(2)(B), entireties property need not be listed in a formal state exemption statute, but may merely be protected against enforcement proceedings by creditors holding certain claims. To the extent that the property is thus "immune from process" under state law, it is exempt under § 522(b)(2)(B). *Napotnik v. Equibank & Parkvale Sav. Ass'n,* 679 F.2d 316, 319 (3d Cir.1982); *In re Hunter,* 970 F.2d 299, 307 (7th Cir. 1992). Conversely, to the extent that a debtor's interests in entireties property are subject to process, those interests are not exempt.

In accord with this understanding of § 522(b)(2)(B), nearly every decision to consider the issue has been held that entireties property is not exempt with respect to claims against both of the tenants, since, under the applicable state law, such joint claims may be enforced against en-tireties property. *See, e.g., Edmonston v. Murphy (In re Edmonston),* 107 F.3d 74 (1st Cir.1997) (applying Massachusetts law); *Garner v. Strauss (In re Garner),* 952 F.2d 232 (8th Cir.1991) (applying Missouri law); *Napotnik,* 679 F.2d at 320 (applying Pennsylvania law). The only exception to this rule has been in connection with the law of Indiana, which expressly renders property held by the entirety exempt even from claims against the tenants jointly. *Hunter,* 970 F.2d at 306–07; *In re Paeplow,* 972 F.2d 730 (7th Cir.1992).

As to claims against only one of the tenants, the extent of the entirety exemption has varied. Where state law provides that a creditor with a claim against only one tenant by the entirety cannot obtain any interest in the entireties property, courts have held that the property is fully exempt as to such individual claims. *See, e.g., Coughlin v. Cataldo (In re Cataldo),* 224 B.R. 426, 429 (9th Cir. BAP 1998) (applying Hawaii law); *In re Barsotti,* 7 B.R. 205, 209 (Bankr.W.D.Pa.1980) (applying Pennsylvania law). On the other hand, where state law allows a creditor with a claim against only one tenant by the entirety to pursue that tenant's contingent interests in the entireties property, the exemption under § 522(b)(2)(B) has been held not to apply to those contingent interests. *See, e.g., Arango v. Third National Bank (In re Arango),* 992 F.2d 611, 614 (6th Cir.1993) (applying Tennessee law and refusing to avoid lien on contingent interests); *Community Nat'l Bank & Trust Co. v. Persky (In re Persky),* 893 F.2d 15, 19 (2d Cir.1989) (applying New York law).

The application of § 522(b)(2)(B) to the present case is thus straightforward. If, under Illinois law, Fleet holds a lien against Chinosorn's contingent interests in his entireties property, arising out of its judgment against him, then, to that extent, Chinosorn's interests are not immune from process and so are not exempt under

7. The Congressional Reports bearing on the Bankruptcy Code merely paraphrase the language of § 522(b)(2)(B). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess., 360–61 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 75–76 (1978).

§ 522(b)(2)(B)—as in the *Arango* and *Persky* decisions. Moreover, as in *Arango*, the lien on Chinosorn's interests would not impair an exemption so as to allow lien avoidance under § 522(f)(1). Accordingly, if Illinois recognizes the existence of Fleet's lien in this case, Chinosorn's motion for lien avoidance must also be denied.

### Conclusion

For the reasons set forth above, the motion for lien avoidance is denied. A separate order will be entered in accordance with this decision.